## BOUIS v. ÆTNA CASUALTY & SURETY CO.

Civ. A. No. 2924.

United States District Court
W. D. Louisiana, Shreveport Division.

Aug. 8, 1950.

Luther S. Montgomery, Richard H. Switzer, Irion & Switzer, all of Shreveport, La., for plaintiff.

C. D. Egan, Cook, Clark & Egan, all of Shreveport, La., for defendant.

DAWKINS, Chief Judge.

This is an action in tort under Article 2315 of the Louisiana Civil Code against the insurer alone and was filed on the assumption it was permitted by Act No. 55 of 1930 of the Louisiana Legislature, which latter statute had been sustained by the state courts, and by this court and the Court of Appeals for the Fifth Circuit, as affecting procedure only. This Act of 1930 was repealed and superseded by the State Insurance Code of 1948, Act No. 195 of 1948.

Defendant has filed a combined motion to dismiss and plea of unconstitutionality, based upon the facts alleged in the original and amended motions, which were conceded for the purposes of the issues involved therein. These facts are recited in the defendant's brief as follows:

"Savage Arms Corporation, a citizen of Massachusetts, manufactured a shotgun for purposes of ultimate sale at retail. The gun in question was sold to complainant by a retail store in Shreveport, and thereafter the complainant was injured as a result of the explosion of the gun in the course of a hunting trip in Caddo Parish, Louisiana. At the time of the accident Savage Arms Corporation was insured against liability for negligent acts by defendant-Insurance Company. The insurance policy involved, a copy of which is attached to the motion, was written, issued and delivered to Savage Arms Corporation in the State of New York and contains the following provisions:

" 'No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the company.

" 'Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance af-forded by this policy. Nothing contained in this policy shall give any person or organization any right to join the Company as a co-defendant in any action against the Insured to determine the Insured's liability.'

"The effective date of the policy is December 1, 1948, and the effective period December 1, 1948, to December 1, 1949. The amount of the obligation of Savage Arms Corporation, if any, to the complainant has never been determined by judgment after trial, or by written agreement of the assured, complainant and the defendant."

The contentions of defendant may be reduced to two main points:

First, that the law of Louisiana at the time the policy was written limited the right to sue the insurer alone, without first reducing the claim to judgment against the insured, to cases where the policies were written or delivered in Louisiana; and

Second, that to deny the relief prayed for in the motion and plea would (a) impair the obligations of its insurance contract in violation of Section 10 of Article 1 of the Federal Constitution; (b) would also violate Section 1 of Article 4 of that Constitution, requiring that "full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State"; and (c) would further violate Section 1 of the 14th Amendment to the Federal Constitution, with respect to due process and equal protection of the law.

Defendant's counsel has prepared an elaborate brief, which, on its face, shows extensive labor and research, but admits all of his contentions were rejected by my associate without permitting argument thereon. I shall, therefore, attempt to answer the points made in a manner to justify the conclusions reached.

Counsel for defendant admits that Stephenson v. List Laundry & Dry Cleaners, Inc., 182 La. 383, 162 So. 19, Duncan v. Ashwander, D.C., 16 F.Supp. 829, and Rogers v. American Employers' Ins. Co., D.C., 61 F.Supp. 142 (the latter two by the writer), had held that Act No. 55 of 1930 "applied to policies written and de-

livered outside of the State of Louisiana, when the accident occurred within the territorial limits" of the state, where the complainant was a citizen and resident of this state, on the theory that said act affected procedure alone and did not involve substantive law. However, he relies upon a decision by District Judge Wright of the Eastern District of Louisiana, in Belanger v. Great American Indemnity Co. of New York, D.C., 89 F.Supp. 736, 737, holding that Section 14.45 of the Louisiana Insurance Code, Act No. 195 of 1948, had repealed Act No. 55 of 1930, permitting the suing of the insurer alone where the policy was issued or delivered outside of the state. The Judge quotes the language of this earlier statute "that 'it shall be illegal for any company to issue any policy against liability' except subject to the further provisions of the act, * * *", and as a comment of his own, states: "It would appear that this language would clearly restrict the application of the provisions of the act to policies of liability insurance issued in Louisiana." He admits, however, that the Louisiana Supreme Court and this court had held otherwise in the cases above cited. In a footnote, Judge Wright quotes Section 14.45 of the Louisiana Insurance Code of 1948, which, instead of stating that "it shall be illegal for *any company* to issue *any policy* against liability" (emphasis by the writer), provides: "No policy or contract of liability insurance shall be *issued or delivered* in this State, unless it contains" (emphasis also by the writer) provisions for the separate suing of the insurer, as provided in the Act of 1930. His decision is based upon the theory that while the latter act was in such general terms as to include "any policy" of "any company," the language of Section 14.45 of the Code had restricted the right to policies issued or delivered in Louisiana. In that case, the policy had been issued in Massachusetts, where the state law, similar to that of New York, invoked in the present case, required that a judgment should first be obtained against the insurer and a return of execution unsatisfied, before the insurer could be sued.

In the Belanger case, the accident happened in, and the plaintiff was a resident of, this state. The insurance company had qualified to do business in Louisiana, just as is true in the case before us. It is stated in defendant's brief, and not disputed by counsel for complainants, that said case is now pending before the Court of Appeal for this Circuit.

In the present instance, the policy was issued on December 1, 1948 (after the adoption of the Insurance Code of that year) for a period of one year, and the accident happened on November 6, 1949. At a special session of the Louisiana Legislature early in 1950, called for the purpose, the statutes of a general nature were recodified and revised, including the repeal of the provisions of the Insurance Code relied upon here by Judge Wright. See Page 963, Volume 5, Revised Statutes of 1950, effective May 1 of this year. At the Regular Session of the Legislature of 1950, two acts were passed dealing with the same subject matter, the titles of which declare:

"Act 541

"An act to amend and reenact Section 655 of Title 22, Louisiana Revised Statutes of 1950, to provide that the right of direct action in favor of an insured person or his or her heirs against the insurer shall exist whether the policy of insurance was written or delivered in the State of Louisiana or not, and whether or not such policy contains a provision forbidding such direct action, provided the accident or injury occurred within the State of Louisiana or the injured person or his or her heirs are residents of this State."

"Act 542

"An act to amend Section 983 of Title 22, Louisiana Revised Statutes of 1950, by adding thereto a provision that no certificate of authority to do business in Louisiana shall be issued to a foreign or alien liability insurer until such insurer has consented to be sued by the injured person or his or her heirs in a direct action, whether the policy was written or delivered in Louisiana or not, and whether or not the said policy contains a provision for-

bidding such direct action, provided the accident occurred within the State of Louisiana or the injured person or his or her heirs are residents of the State."

These acts did not go into effect until twenty days after the final adjournment of the Legislature, which took place on July 6, 1950, or on the 27th day of that month.

Counsel for defendant argues that the motions in the present case must be determined according to Section 14.45 of the Insurance Code, which was in effect when the policy was issued, when the accident happened, and when this suit was filed. On the other hand, plaintiff contends, first, that there was no substantial difference in the meaning or purpose of that section and Act No. 55 of 1930, because, in both measures, the Legislature intended to cover all cases where the accident happened in and the plaintiff was a resident of this state, and should be applied accordingly to cases brought in this court, based upon diverse citizenship. It is further asserted that the immediate passage of Acts Nos. 541 and 542 of 1950, supra, was a legislative construction or interpretation of Section 14.45 of the Insurance Code by the same Legislature which had enacted the latter and was done for the purpose of overcoming the Belanger decision. Finally, plaintiff says that since all this legislation deals with procedure alone, as settled by the decisions referred to, there is no constitutional inhibition against giving the last two acts retroactive effect, as of the date they went into effect, to-wit, July 27th, which has already passed, as this is written.

The two main contentions of defendant will be taken up in reverse order:

■ 1. It seems to be settled that these statutes do deal with procedure alone. The writer in 1932, in Hudson v. Georgia Casualty Co. et al., D.C., 57 F.2d 757, followed the decisions of the state courts to that effect, and to some extent analyzed and rejected the claims of unconstitutionality under the Federal Constitution. In that case, however, the plaintiff had reduced his claim to judgment against the insured in the state court, in a proceeding actually defended by

the insurer, before bringing his suit in this court.

Later, in 1936, the writer, in Duncan v. Ashwander, D.C., 16 F.Supp. 829, was again confronted with similar constitutional questions, in construing statutes *in pari materiae*, Acts No. 86 of 1928, No. 184 of 1932 and No. 156 of 1934, of the Louisiana Legislature, in their application to a suit against a nonresident using the highways of the state. Decisions of the state and federal courts were again analyzed, and the contention of unconstitutionality likewise rejected.

Thereafter, in 1943, the Court of Appeals for this Circuit in Wells v. American Employers' Ins. Co., 132 F.2d 316, 317, where direct actions had been brought against the insurer in Texas for damages occurring in Louisiana, dismissed the complaints, because the law of Texas did not permit such procedure. It further found that procedure only was involved in Act No. 55 of 1930 of the Louisiana Legislature, adding that, while laws of the United States in matters of procedure would prevail over those of the state, "there is nothing to the contrary (to Act No. 55 of 1930) in the federal statutes or Federal Rules of Civil Procedure." The pertinent cases were again reviewed, and the present contentions again rejected. See, also, Merchants' Mutual Automobile Liability Insurance Co. v. Smart, 267 U.S. 126, 45 S.Ct. 320, 69 L.Ed. 538, and Ruhlin v. New York Life Ins. Co., 304 U.S. 202, 58 S.Ct. 860, 82 L.Ed. 1290.

Therefore, this court feels impelled to overrule the claims of unconstitutionality, under the Federal Constitution.

■ 2. Coming now to the first contention of defendant, No. 2 above, as earlier pointed out, Section 14.45 of the Insurance Code was in effect when the policy in this case was issued in New York, when the accident out of which the suit arose happened, and when the complaint was filed. The issue, therefore, appears to be solely one of statutory construction. There has been no decision of the state courts to guide us on this point as to the effect of the two statutes passed at the Regular Session of

the Louisiana Legislature in 1950, and we are compelled to apply general principles. Act No. 55 of 1930 was in general terms to the effect that any attempt to restrict the right to a direct action against insurer by "any company" in "any policy" should be "illegal." This language was held to apply in all cases, no matter where the policies were issued or delivered, where the accidents happened in this state and the complainants were citizens of Louisiana. On the other hand, Section 14.45 of the Insurance Code of 1948, in specific terms, provides that "No policy or contract of liability insurance shall be *issued or delivered in this State,* unless * * *" (emphasis by the writer) that prohibits such direct action. It is a well-recognized duty of the courts in construing statutes, as well as contracts, to apply the plain, natural and unambiguous meaning of words and phrases, and where there is a change of language which has restrictive effect, to assume that there was some purpose or reason therefor. 59 C.J. 969, 1050. It certainly could not be said that if the Insurance Code had omitted entirely any provision similar to those in Act No. 55 of 1930, but had repealed all other laws on this subject of liability insurance, claimant could still sue the insurer in a direct action omitting the insured where the policy or contract contained provisions of the nature relied upon by defendant here. Hence, having repealed specifically Act No. 55 of 1930, the new provision in Section 14.45 of the Code stood alone and had to be interpreted according to the fair and reasonable meaning of the words "issued or delivered in this State".

It may be that those who drafted the Code were engrossed in other matters considered more important in the field of insurance law than a direct action against the insurer, or were not familiar with the jurisprudence; yet, it seems clear that since the Legislature wrote this provision into the law, we would not be justified in giving it a meaning in conflict with the plain language used.

I am not impressed with the argument of complainants that the subsequent passage of Acts Nos. 541 and 542 of 1950 should be treated as legislative constructions of this section of the Insurance Code, and that they should be given that effect here, in the face of the plain and unmistakable meaning of the words used in the Code. It would be just as reasonable, and perhaps more so, to conclude that the purpose was to restrict these suits which, as Judge Wright points out, have become so numerous as to increase substantially the business of the Federal Courts in Louisiana.

■ It is my conclusion that Section 14.45 of the Insurance Code applied when this suit was filed and that at that time the action was premature, because of the said provisions of the policy requiring as a condition precedent that any claim should be reduced to judgment against the insured before suing the insurer.

However, notwithstanding this, plaintiff says that Acts Nos. 541 and 542 of 1950 dealt solely with procedure and were obviously intended to remedy the situation by changing the verbiage used in Section 14.45 of the Insurance Code, and for this reason these measures apply to claims which had accrued and suits then pending, as well as to all future actions.

This brings us to the question of whether these acts are retroactive in their effects. We find that in Shreveport Long Leaf Lumber Co. v. Wilson et al., 195 La. 814, 197 So. 566, 570, the Supreme Court of Louisiana dealt with the remedial issue of prescription as applied to a lien created in favor of laborers and materialmen on buildings to which their labor or materials had contributed in construction. The earlier statutes had carried, when the claim was recorded in accordance therewith, a prescriptive period of one year, but expressly preserved the lien so recorded where suit thereon had been instituted within the year, and until the litigation was finally determined. The amended act required reinscription of all such claims within the year, but omitted all reference to the pendency of proceedings for enforcement. There plaintiff's suit was filed on September 14, 1938, but the year allowed for reinscription of the lien expired on June 7th of 1939, and it was not reinscribed. The amended act was passed in 1938, and went into effect

on July 27th of that year. The case was tried on the merits on June 28th, 1939, and was still under advisement by the trial court when the curator appointed for Wilson, the latter not having made any personal appearance and the action as to him being therefore *in rem*, moved to reopen it on October 20th following, which motion was granted; and then a plea of prescription of one year was interposed for failure to reinscribe the lien against the property. The plea was sustained, and in affirming this ruling, the Supreme Court said:

"The general rule from which there seems to be no dissent is that, where a statute deals with procedure only, it applies to all actions, to those which have accrued or are pending as well as to future actions. This rule is subject to the qualification that such a statute is void or inapplicable if its operation will necessarily result in the impairing of contracts or the divestiture of vested property rights. Such statutes operate retrospectively and do not fall within the general rule that statutes must be construed as prospective in their operation unless the language used plainly shows a contrary intent. Paulsen v. Reinecke, 181 La. 917, 160 So. 629, 97 A.L.R. 1184; Landry v. Grace, 167 La. 1042, 120 So. 770; Whittington v. Payne, 151 La. 595, 92 So. 128; Cassard v. Tracy, 52 La.Ann. 835, 27 So. 368, 49 L.R.A. 272; Dunning v. West, 51 La.Ann. 618, 25 So. 306. See also Amendatory Acts, 59 C.J., Section 719, page 1181.

" 'Statutes relating to procedure or legal remedies are undoubtedly within the general rule against retrospective construction where the effect of giving them a retroactive operation·will be to impair the obligation of contracts or to disturb vested rights. But the rule does not prevent the application of statutes to proceedings pending at the time of their enactment where they neither create new, nor take away vested, rights. When a new statute deals with procedure only, prima facie, it applies to all actions—those which have accrued or are pending and future actions.' 25 R.C.L., Section 38, page 791.

"Counsel for plaintiff advance the argument that, if Act 323 of 1938 be so construed as to give it retrospective effect, it would be unconstitutional, being in violation of Section 15, Article IV, of the State Constitution, which provides that no ex post facto law, 'nor any law impairing the obligation of contracts, shall be passed; nor shall vested rights be divested, unless for purposes of public utility', etc.

"The amending statute leaves untouched and unimpaired the substantive rights which plaintiff acquired under the original act. It does not go beyond, and give a different legal effect to, the lien and privilege which came into existence under the original statute. It does not affect transactions which occurred before it became operative. It took away from plaintiff none of the inherent benefits of its lien. The vested rights acquired under the act of 1926 were left undisturbed.

"Section 12 of the 1926 act outlines in detail a method by which laborers and material men could protect their rights in cases where those rights were not protected otherwise by the statute. They could, by following the method outlined by the statute, bring into existence a lien and privilege in their favor on the property of the owner of the works to secure the unpaid balance due them. The liens, so acquired under Section 12 of the original statute, were vested rights, as that term is used in the statute, and could not be divested by any subsequent legislation. The amending act does not disturb vested rights acquired under the original act.

"The only change made by the amending act related to the remedy for keeping the lien alive for a period exceeding one year. Counsel for plaintiff seem to think that the remedy provided in the original act for interrupting prescription by judicial proceeding was a vested right which could not be divested. But the settled rule is against this theory."

 In view of this ruling by the state court, since it is settled that the right to sue the insurer directly and without previous reduction of the claim to judgment against the insured, does not involve a substantive right but merely procedure, the remedy in that respect found in Acts Nos. 541 and 542 of 1950 is available and ap-

plies to the proceeding before us, they simply having rendered invalid the provisions of the policy prescribing the procedure which required that judgment should first be obtained against the insured.

In principle, no difference can be seen between the withdrawal of the provisions for interruption of prescription by filing suit and the enlargement of the scope of the procedure in this case to apply to all suits whether the policies were issued within or without the state.