56 So.2d 297 (1951)
CHURCHMAN et al.
v.
INGRAM et al.
No. 7720.
Court of Appeal of Louisiana, Second Circuit.
December 15, 1951.
Rehearing Denied January 30, 1952.
*298 Blakeley & Blakeley, Dallas, Tex., Gist, Thornton & Murchison, Alexandria, for appellants.
Harry Fuller, Winnfield, W. T. McCain, Colfax, Stafford & Pitts, Alexandria, for appellees.
HARDY, Judge.
This is a suit for personal injuries and property damages resulting from an automobile collision. Plaintiffs are Charles R. Churchman, a resident of Grant Parish, Louisiana, driver of one of the cars, who sustained serious personal injuries; Liberby Mutual Insurance Company, workman's compensation insurance carrier for Churchman's employer, seeking recovery of amounts paid out by way of compensation; and Motors Insurance Corporation, carrier of a collision insurance policy on the Churchman automobile. Defendants are Jack Ingram, Jr., a resident of Dallas, *299 Texas, driver of the other vehicle involved in the accident, and Texas Lloyds, a Texas insurance corporation also domiciled in Dallas, Texas, alleged to be the liability insurer of the Ingram vehicle.
Numerous preliminary pleas and exceptions were filed on behalf of the defendant, Texas Lloyds, which pleadings will be hereinafter discussed in some detail. The defendant, Jack W. Ingram, Jr., made no appearance.
The accident occurred in Grant Parish and involved the Churchman and Ingram automobiles. In this suit Churchman seeks recovery of the total sum of $27,148.01 made up of itemized claims for pain and suffering, loss of earnings, medical and hospital expenses, permanent physical injuries, and property damage to his automobile, being the $50.00 deductible expense which was not covered under his insurance policy. Plaintiff, Liberty Mutual Insurance Company, sought judgment for the sum of $1,470.00, representing compensation payments made to Churchman, together with $500.00 paid out as medical expenses, and further prayed for recognition of its right to claim all further amounts which might be paid in the way of compensation. The plaintiff, Motors Insurance Corporation, as subrogee, asked judgment in the sum of $1,535.40, representing the amount paid plaintiff, Churchman, under its collision coverage policy.
Defendant's, Texas Lloyds, exceptions were overruled and after trial on the merits there was judgment against said defendant in favor of plaintiff, Liberty Mutual Insurance Company, in the full sum of $1,970.00; in favor of plaintiff, Charles R. Churchman, in the full sum of $8,030.00; and in favor of plaintiff, Motors Insurance Corporation, in the full sum of $1,535.40, from which judgment the defendant, Texas Lloyds, prosecutes this appeal. Judgment by default was rendered as prayed for against the defendant, Ingram, from which judgment no appeal was taken. Accordingly, this appeal involves only Texas Lloyds.
The facts connected with the accident itself are not at issue. Indeed, no defense on the merits is urged. Similarly there is no dispute with respect to the quantum of the judgments awarded the several plaintiffs. The only issues which are before us concern the pleas and exceptions which the defendant, Texas Lloyds, contends should have been sustained.
Inasmuch as Texas Lloyds is the only defendant at interest in connection with this appeal, it will hereinafter be designated and referred to as the defendant.
Defendant filed a plea and exception of res judicata; an exception of no right of action, and an amended exception of no right of action.
The exception and plea of res judicata is predicated upon the proposition that the 95th Judicial District Court of Dallas County, Texas, on January 10, 1950, rendered and signed a declaratory judgment in a proceeding wherein Texas Lloyds was the plaintiff and Jack W. Ingram, Sr., the defendant; that said judgment declared that the policy of insurance issued by Texas Lloyds in favor of Jack W. Ingram was null and void, in no way binding upon the parties and of no force and effect. On trial of this case, in support of this plea, copy of judgment properly certificated under the Act of Congress was introduced in evidence.
In support of the exceptions of no right of action defendant relies upon a number of points which may be summarized as follows:
1. That at the time of the accident Jack W. Ingram, Jr. was the owner of the insured automobile and that Jack W. Ingram, Sr. had no insurable interest therein.
2. That the policy of insurance was issued upon the faith of the declaration by John W. Ingram, Sr. that he was the sole owner of the vehicle insured.
3. That by reason of the above facts there was a breach of the sole ownership clause which rendered the policy null and void ab initio, as a consequence whereof plaintiffs have no right of action against defendant.
4. That the policy of insurance is subject to Texas law with respect to the joinder of parties defendant, and both the terms *300 of the policy and Texas law prohibit the right of direct action against the insurer.
5. That inconsistent and contradictory statements made by Jack W. Ingram, Sr., the named assured in the policy, constituted a violation of the cooperation clause thereof and relieved the insurer of liability.
6. Alternatively, in the event the court should hold Jack W. Ingram, Jr. to be the named assured, that his inconsistent and contradictory statements constitute a violation of the cooperation clause and served to relieve the insurer of liability under the policy.
The above points raised by defendant involve mixed questions of law and fact and necessitate a recapitulation of the facts contained in the record which bear upon the defenses urged. We proceed to outline the material and pertinent facts as briefly as may be possible.
Jack W. Ingram, Jr., a twenty-year old youth who had earned his wings in the service of the United States Navy, returned to his family home in Dallas, Texas, in October, 1949, to spend his leave with his family. It appears that the young man's father, Jack W. Ingram, Sr., had promised to help his son get a car if and when he successfully completed his training. On or shortly before October 25, 1949, young Ingram contacted his uncle, E. W. Ingram, who was engaged in the real estate and automobile business in Dallas, Texas, with reference to the purchase of an automobile. E. W. Ingram in turn contacted another brother and agreed to purchase from him a used 1946 Mercury sedan. The purchase price agreed upon was in the neighborhood of $1,700.00. During his service in the Navy, Jack Ingram had saved a part of his pay with which was bonds were purchased and transmitted to his father, Jack W. Ingram, Sr. There is no definite testimony which would fix the total amount comprehended by these savings, but it appears that it was a sum of several hundred dollars.
In effecting the purchase of the Mercury automobile the amount of $546.00 was made up by the father and son, admittedly by far the greater part thereof being the son's contribution. E. W. Ingram arranged with the Dallas National Bank for the financing of the balance of the purchase price and himself took the note to his brother, Jack W. Ingram, for his signature. The note was not introduced in evidence, but the testimony is conclusive to the effect that the father, Jack W. Ingram, was the maker of the note. Although it was contemplated that the monthly installments would be met by young Ingram out of his Navy pay, it does not appear that young Ingram was obligated on the note. The purchase transaction, the payment of the price, and the negotiation of the loan, all appear to have been concluded on October 25, 1949. In due course certificate of title to the automobile, as required under the laws of the State of Texas, was issued to Jack W. Ingram, the father.
Concurrent with the purchase and financing negotiations, and on the same date, E. W. Ingram, who in addition to his other activities, seems to have been engaged in insurance brokerage, called the Ray Shelton Agency by telephone and in conversation with an employee thereof, one Wilkinson, arranged for the issuance of a comprehensive coverage insurance policy. The policy was issued in the name of Jack W. Ingram as the insured. Certain provisions of the policy which are brought into question are hereinbelow set forth in detail.
After consummation of the described negotiations young Ingram took possession of the automobile and at the end of his visit in Dallas undertook to drive the automobile back to his base station. En route on U. S. Highway #71 on November 1, 1948, in Grant Parish, Louisiana, he was unfortunately involved in a collision with plaintiff, Churchman's, automobile, which is the basis of this suit.
It must be borne in mind that at the time young Ingram was a minor and as such he was prohibited from acquiring title to the automobile in his own name, from executing a valid and enforceable note or mortgage, and from obtaining in his name a policy of insurance.
First addressing ourselves to a consideration of the plea of res judicata we find not the slightest difficulty in making disposition thereof. Article 2286 of the *301 Civil Code of Louisiana specifically sets forth and enumerates the requirements for the support of the plea of res judicata and clearly provides, inter alia, that "* * * the demand must be between the same parties * * *."
Certainly the suit by the insurer against the named assured, to which none of the plaintiffs in this action were parties, cannot serve to support the plea that is urged and it follows that the same was correctly overruled.
We next proceed to a consideration, seriatim, of the grounds relied upon by defendant in support of its exception of no right of action.
At the outset we concede that the contract of insurance here involved is governed by the lex loci contractus. The contract of insurance was entered into in the State of Texas between a Texas insurance association and a resident of Texas as the insured.
The first point of defense is predicated upon the proposition that Jack W. Ingram, Sr., the named assured in the policy, was not the true owner of the vehicle insured; had no interest therein, and, as a consequence, possessed no insurable interest. It is urged that this fact brings into application certain conditions of the policy.
Paragraph 24 of the policy reads as follows: "By acceptance of this policy the named insured agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance."
The declarations which are relied upon by defendant are set forth in brief of its counsel before this Court as follows: "The policy contains certain items under the heading, `Declarations.' Number One was: Name of the Insured, Jack W. Ingram; Address, 700 West 8th Street, Dallas, Dallas County, Texas; Occupation of the named insured is Civil Service Chief Inspector. Number Four; `The automobile is unencumbered unless otherwise stated herein;' Nothing stated. Number Five: `_____ The named insured is the sole owner of the automobile except as herein stated: No exceptions.'"
Reference to the original policy confirms the fact that no encumbrance is noted in Item 4. However, no issue is made of this point on behalf of defendant by reason, or so we assume, of the holding of Texas courts to the effect that an undisclosed encumbrance does not materially affect liability. Kuntz v. Spence, Tex.Civ. App., 48 S.W.2d 413.
We think it necessary to set forth in full the declaration under Item 5 of the policy which we think sheds more light upon the proposition than the above extract quoted by counsel. In full the declaration reads as follows:
"Any loss under coverages D, E-1, E-2, E-3, F, G-1, G-2, G-3, H and I is payable as interest may appear to the named insured and
 ________
 (Name and address)
Except with respect to the above stated bailment lease, conditional sale, mortgage or other encumbrance the named insured is the sole owner of the automobile, except as herein stated;
 ________."
The blanks in the above-quoted declaration were not filled in and no statement of any kind was made with respect thereto. The first question that occurs to us is what declarations could have been made. We do not perceive any statement or declaration which would adequately cover the facts above recited. But it is strenuously urged by diligent counsel for defendant that under the established jurisprudence of the Texas laws, legal title alone does not establish ownership. In other words, counsel quite correctly contends that notwithstanding the Certificate of Title Act, Vernon's Ann.P.C.Tex. art. 1436-1, bearing upon the registration of title, Courts will look behind such an evidence of title in order to ascertain the true ownership. Upon this predicate counsel would have us conclude that young Ingram was the true owner and that his father, the named insured, *302 was simply the holder of the certificate of title. In support of this proposition counsel cites numerous authorities, which we have carefully examined. The leading case, which, according to counsel's brief, has not been reversed and modified and is still the law of Texas, appears to be Hicksbaugh Lumber Company v. Fidelity and Casualty Company, Tex.Civ.App., 177 S.W.2d 802, 804. The facts recited show that plaintiff lumber company, the owner of a truck insured by defendant, entered into a contract of sale with the Hervey Lumber Company under which the Hervey Company agreed to purchase the truck for a consideration of $1,000.00 cash and the further sum of $2,500.00 represented by a promissory note due thirty days after date. The accident and resultant damage to the truck in question, which was in the possession and use of the Hervey Company, occurred after the maturity and payment of the note but before the transfer of certificate of title had been effected. The Hicksbaugh Company, still the technical owner under the certificate of title and the insured under the policy with the defendant company, sought to recover under the policy. The court denied recovery on the ground that the certificate of title was not conclusive as to ownership and under the facts related the court held that the Hervey Company was the true owner since it had "unquestionably paid for" the truck in question. Elaborating its reasons the Court declared: "Under above authorities it is apparent, we think, that, although the complete legal title to said equipment had not passed out of the appellant and into the Hervey Lumber Company, because of the provisions of the Certificate of Title Act, nevertheless the Hervey Lumber Company had the equitable title and an interest therein and had not only the legal right to the possession thereof, but the legal right to compel the assignment and transfer of the certificate of title thereto. It follows that appellant was not `the unconditional and sole lawful owner' of said equipment, and that there had been `a change in the nature of the insurable interest of the insured' at the time the alleged damages were sustained."
To the same effect is another leading case by the Supreme Court of Texas, Pioneer Mutual Compensation Company v. Diaz, 142 Tex. 184, 177 S.W.2d 202.
We think the holdings in the above cases, which accord with other numerous cited authorities, is thoroughly sound. As we appreciate the holding the effect is that the mere formality of the registration of title is not controlling and conclusive evidence as to ownership. A test of true ownership as fixed by the Texas Courts is set forth as being a legal right to compel the assignment and transfer of the certificate of title to a vehicle. Certainly under the facts of the instant case Jack W. Ingram, Jr. had no right to compel the transfer and assignment of legal title and until he became of age he could not acquire ownership of the vehicle. We think the facts are overwhelmingly opposed to the contentions advanced on behalf of defendant. Jack W. Ingram, Sr. was not only the holder of the certificate of title but he and he alone was obligated for the payment of the encumbrance against the vehicle amounting to some $1,300.00 more or less. How then can it be contended that Jack W. Ingram, Jr., despite his possession and use of the car, was the true owner, even giving due consideration to the fact that he had contributed several hundred dollars toward the purchase of the automobile. Clearly young Ingram was entitled to the use and possession of the automobile in question only by permission of his father and subject to his father's control. Again reference to the policy specifically provides that the insurance for bodily injury and property damage liability included any person using the automobile with the permission of the named insured. (Article III, "Definition of Insured".) Even as mere registration of title is not conclusive as to ownership, so possession and use is not conclusive. All the facts bearing upon the question of ownership must be considered and evaluated. We are firmly convinced that by any standard or under any requirement, Jack W. Ingram was the sole owner of the automobile in question.
The proposition is urged in further support of the plea of violation of the *303 sole ownership declaration that both of the Ingrams, father and son, by depositions taken in the early part of November, 1949, and by the statement of young Ingram which was made on November 2nd following the accident, admitted that the ownership of the automobile involved was vested in Jack W. Ingram, Jr. In answer to this we simply point out that the determination of ownership is a conclusion of law which must be based upon established facts. Neither of the Ingrams were qualified to determine this proposition, and since it appears that, at the time, they were acting without benefit of any legal advice or counsel, we cannot justifiably conclude that this argument has any basis for application.
The argument might be carried further. For example, the elder Ingram had a very definite insurable interest by reason of the fact that in the event of injury and damage to third persons he and not his son would be liable. Additional reasons for our holding might be developed at length but we think it unnecessary, particularly in consideration of the fact that the contention of the defendant insurer would require a holding that a minor was in truth and in fact the owner of a property that he was prohibited by law from owning and insuring.
This disposes of the contentions of legal or insurable interest and breach of the unconditional declaration of sole ownership.
We next proceed to an examination of the defense based upon a violation of the cooperation clause of the policy.
Admittedly the policy of insurance provides that the insured shall cooperate with the company. Upon the basis of this agreement it is urged on behalf of defendant that the same has been violated by the named insured as the result of which violation the policy is null, void and of no effect. The principal ground of reliance, with respect to the asserted non-cooperation, again rests upon the inconsistent statements of fact of Jack W. Ingram and his son, to which we have heretofore called attention in this opinion.
We are frank to observe that with respect to the charge of cooperation the shoe seems to be on the other foot. The insurance company, defendant herein, is obviously guilty of having accepted an application and issued a policy without any real investigation. It is worthy of note that the defendant has never tendered in any of these proceedings the testimony of the employee of its agency who accepted the application and procured the immediate issuance of the policy. Under such circumstances it is well settled that this failure to produce a material witness must be construed as militating against defendant's contentions. In other words, it must be considered that his testimony as a witness, if tendered, would be unfavorable.
We are impressed with the fact that following the accident which is the basis of liability the defendant rushed into a Texas court for the purpose of procuring a declaratory judgment and relieving it from liability under the policy. This action was taken before the making of any of the inconsistent statements of which defendant now complains. Again the record discloses that the insurance company after filing of the suit in Louisiana not only failed, but affirmatively refused, to take any action on behalf of Ingram and abandoned him to his fate.
Similarly we are convinced that the question of the validity, vel non, of the policy and of the consequent liability of the defendant as between it and the named insured is beside the point. Our courts have been emphatic in their declarations that an insurance policy against liability is not issued primarily for the protection of the insured but for the protection of the public. This principle has been construed to mean that the right of direct action under the provisions of Act No. 55 of 1930 vests in an injured party an immediate right of direct action against the insurer of the party responsible for the injuries. This has been held to be an expression of the public policy of this State. Davies v. Consolidated Underwriters, La.App., 6 So. 2d 347; West v. Monroe Bakery, 217 La. 189, 46 So.2d 122; Jackson v. State Farm Mutual Automobile Insurance Company, 211 La. 19, 29 So.2d 177.
*304 We have noted and considered the authorities cited by zealous counsel for defendant in support of the defense of lack of cooperation but are forced to reject them as being inapplicable in view of the holding of the courts of this State, to which attention has been called, supra. While we conceded early in this opinion that the lex loci contractus, in this instance the law of the State of Texas, governs the construction and interpretation of the policy as between the insured and the insurer, we wish to emphasize the point that the rights of the injured party or parties as against the insurer are governed by the law of the State of Louisiana.
Upon the authority of these pronouncements we have found no difficulty in reaching the conclusion that the defense of lack of cooperation under the facts is untenable and was properly rejected.
The next defense interposed by defendant is found in the claim that plaintiffs have no right or cause of action against Texas Lloyds in this proceeding because not only the provisions of the policy but the law of the State of Texas prohibits a direct action against the insurer. As a matter of fact we understand that the laws of the State of Texas prohibit even the raising of the question of insurance against a defendant in a tort action and the introduction of this question on trial is considered to be reversible error.
Again the urged defense is based upon the proposition that the contract of insurance was written in Texas by a Texas company with a resident of the State of Texas. Again we emphasize the fact that in this action the plaintiffs are injured third parties. The cause of action, that is, the collision, occurred in Louisiana. Defendant is subject to the jurisdiction of the courts of this State. It follows that the courts of the State of Louisiana have jurisdiction of the determination of the direct action which is a right specifically granted under Act No. 55 of 1930. The validity of the direct right of action has been sustained by our Court in a number of cases, among which we find Robbins v. Short, La. App., 165 So. 512; Duncan v. Ashwander, D.C., 16 F.Supp. 829; Rogers v. American Employers' Insurance Company, D.C., 61 F.Supp. 142. But it is strenuously argued on behalf of defendant that the Louisiana Legislature, with full knowledge of the jurisprudence of the State, which sustained the extra-territorial effect of Act No. 55 of 1930, in effect repealed the act by the enactment of Section 14.45 of Act No. 195 of 1948, LSA-R.S. 22:655, which is known as the Louisiana Insurance Code. The section reads as follows: "No policy or contract of liability insurance shall be issued or delivered in this state, unless it contains provisions to the effect that the insolvency or bankruptcy of the insured, shall not release the insurer from the payment of damages for injuries sustained or loss occasioned during the existence of the policy, and any judgment which may be rendered against the insured for which the insurer is liable which shall have become executory, shall be deemed prima facie evidence of the insolvency of the insured, and an action may thereafter be maintained within the terms and limits of the policy by the injured person or his or her heirs against the insurer. The injured person or his or her heirs, at their option, shall have a right of direct action against the insurer within the terms and limits of the policy in the parish where the accident or injury occurred or in the parish where the insured has his domicile, and said action may be brought against the insurer alone or against both the insured and the insurer, jointly and in solido. * * * Nothing contained in this Section shall be construed to affect the provisions of the policy or contract if the same are not in violation of the laws of this state. It is the intent of this Section that any action brought hereunder shall be subject to all of the lawful conditions of the policy or contract and the defenses which could be urged by the insurer to a direct action brought by the insured, provided the terms and conditions of such policy or contract are not in violation of the laws of this state."
In the consideration of this contention we must examine the pertinent provisions of Act No. 55 of 1930 which reads as follows: "Section 1. That, after the passage of this act, it shall be illegal for any company *305 to issue any policy against liability unless it contains a provision to the effect that the insolvency or bankruptcy of the assured shall not release the company from the payment of damages for injury sustained or loss occasioned during the life of the policy, and any judgment which may be rendered against the assured, for which the insurer is liable, which shall have become executory, shall be deemed prima facie evidence of the insolvency of the assured, and an action may thereafter be maintained within the terms and limits of the policy by the injured person or his or her heirs against the insurer company. Provided further that the injured person or his or her heirs, at their option, shall have a right of direct action against the insurer company within the terms, and limits of the policy, in the parish where the accident or injury occurred, or in the parish where the assured has his domicile, and said action may be brought either against the insurer company alone or against both the assured and the insurer company, jointly and in solido."
It is conceded that the Insurance Code, Act No. 195 of 1948, including Section 14.45, was included in the Louisiana Revised Statutes of 1950 which were duly adopted by Act No. 2 of the First Extraordinary Session of the Legislature of 1950. Section 14.45 of the Insurance Code is set forth in the LSA-Revised Statutes under Title 22:655.
It is further conceded that at the Regular Session of 1950, Act No. 541 specifically amended Section 655 of Title 22 of the Revised Statutes of 1950 by providing for a direct action regardless of whether the policy was written or delivered in the State of Louisiana.
Still another legislative action bearing upon this question is a concurrent resolution adopted by the Louisiana Legislature on June 26, 1950, which specifically set forth the fact that it was never the intention of the 1948 Legislature in enacting Section 14.45 to repeal or in anywise restrict Act No. 55 of 1930 insofar as it provided a direct action against liability insurers.
The burden of the argument is that the adoption of Section 14.45 of the Insurance Code in 1948, in effect repealed the direct action provisions of Act No. 55 of 1930, by limiting this right to policies issued and delivered in this State, which right was not revived until the adoption of Act No. 541 of 1950. In other words, defendant's counsel argue that between 1948 and 1950 there was an interim or period within which the right of direct action against a liability insurer was not accorded to injured parties by Louisiana law except as to policies issued and delivered in Louisiana. Inasmuch as the accident giving rise to plaintiff's cause of action occurred during this interim counsel conclude that no right of direct action existed in favor of plaintiffs. Certainly the conclusion is justified if the premise upon which it is predicated be correct, and if, further, the issue concerned is a matter of substantive law. For if the legislation on this point be regarded as remedial or procedural, the Acts of 1950 and the resolution of 1950 above noted must be considered retroactive in effect.
We are thoroughly cognizant of and have closely studied the two divergent lines of cases which have been considered by the distinguished Judges of our Federal District Courts. Judge Dawkins in Rogers v. American Employers' Insurance Company, D.C., 61 F.Supp. 142, held that both the no action clause of a policy, valid under the law of the place where issued, and the direct action provision of the Louisiana statute, involved matters of remedial or procedural law and had no substantive effect. The same conclusion was reached by the same Judge in Bouis v. Ætna Casualty and Surety Company, D.C., 91 F.Supp. 954. This case further held that the remedial statutes of 1950 were retroactive.
Of a contrary opinion were the late Judge Caillouet in Wheat v. White, D.C., 38 F. Supp. 796, and Judge Wright in the comparatively recent case of Belanger v. Great American Indemnity Company of New York, D.C., 89 F.Supp. 736.
In Bayard v. Traders and General Insurance Company, D.C., 99 F.Supp. 343, Judge Dawkins was called upon to give *306 reconsideration to this same point, which he did in a most able and exhaustive opinion. The conclusion reached after this reconsideration was that the right of direct action in Louisiana could not be sustained with respect to a contract of insurance made, delivered and primarily intended to apply in the State of Texas.
The case of Belanger v. Great American Indemnity Company was considered by the United States Court of Appeal for the Fifth Circuit, 188 F.2d 196, 198. The court affirmed the judgment on the ground that the case had been dismissed on April 5, 1950, and therefore finally determined before the passage of the remedial statutes of 1950, the retroactive effect of which statutes were relied upon by plaintiff-appellant. The court held that: "the question concerns the correctness of the construction and application given to the existing statute as written and enforced at the time of the adjudication. The defendant was entitled to have its rights determined in accordance with existing law, and this being done, the adjudication may not be annulled by subsequent legislation."
But we point out the strong implication of the holding indicating that the remedial legislation would be applicable to a case in which judgment had not been pronounced at the time of the adoption of such legislation. In this connection the court specifically noted the principle of law: "* * * which permits a change of procedure to affect pending proceedings from the effective date of the change * * *."
The same court (United States Fifth Circuit) in Wells v. American Employers' Insurance Company, 132 F.2d 316, held the remedy of direct action to be remedial and procedural.
Turning from the jurisprudence of our Federal Courts to that of our State Courts, by which we are bound, and, as we have always understood, by which the Federal Courts should be bound with respect to the interpretation of Louisiana statutes, our consideration leads us to an unreserved endorsement of the conclusion set forth in Robbins v. Short, supra [165 So. 515], which was expressed as follows: "Our conclusion is that that part of Act No. 55 of 1930 permitting a claimant to join the insurer with the owner of the car under an automobile liability accident policy where a suit for damages is brought only relates to the form and effect of the action and may be applied by the lex fori, even though the contract of insurance is governed by a different provision in the policy valid under the laws of the state where entered into."
We think this reason is indubitably sound. Resort to a consideration of practical, logical reasoning but serves to confirm us in this conclusion. The Texas statute and the policy provision clearly deal with procedure in that they attempt to fix the manner in and method by which an injured party may proceed in Texas tribunals to fix liability. With due respect this results in a somewhat circuitous proceeding. The injured party must take action against the insured and after judgment he may then proceed against the insurer, thus necessitating two actions in the enforcement of his claim. The direct action provision of the Louisiana statute eliminates an unnecessary and superfluous burden by providing that the injured party may proceed directly against the insurer. Certainly this is purely a matter involving remedy or procedure. No substantive rights of the insurer are affected, denied or impaired because the law carefully reserves the right of such party to interpose any and all defenses available to its insured.
Impressed as we are with the purpose of the legislation as being designed purely to effect a reform in remedy and procedure, we have no hesitancy in declaring, for this reason, that it has retroactive effect.
The Acts of 1950 became effective several months before this case was tried and adjudicated, and we are firm in the opinion that they supplied any deficiency or lack of authorization in connection with the right of direct action which may have been asserted subsequent to the adoption of the Insurance Code in 1948 and prior to the adoption of the statutes of 1950.
In further connection with this holding we think it is implemented by consideration *307 of the concurrent resolution of 1950 which clearly sets forth the intent of the Legislature.
This leaves for our consideration only the constitutional questions raised in defendant's supplemental and amended answer, namely, that the statutes of the State of Louisiana permitting a direct right of action are violative of Article 1, Section 10 of the Constitution of the United States, Amendment 14 of the Constitution of the United States, and Article 1 of Section 2 of the Constitution of 1921 of the State of Louisiana.
These propositions involve the prohibitions against the impairment of obligations of contracts and the guarantees of due process of law.
Further asserted in the same pleading is a reiteration of the contention that failure to give full faith and credit to the declaratory judgment rendered in the State of Texas is violative of the full faith and credit clause of the Constitution of the United States as set forth in Article 4, Section 1 thereof.
The contentions noted have simply been pointed out in brief of counsel for defendant without argument. We do not find any authority which would justify sustaining these contentions. On the contrary, it has been many times held that the direct action provisions are not violative of the Constitution. We refer to the cases hereinabove cited which, in the holdings of the several courts, have disposed of similar exceptions.
The case of Hartford Accident and Indemnity Company v. Delta and Pine Land Company, 292 U.S. 143, 54 S.Ct. 634, 78 L.Ed. 1178, has been discussed at some length in connection with other points in briefs of counsel. It is quite true that the court in the cited case held that a State cannot extend the effect of its laws beyond its borders so as to destroy or impair the right of citizens of other states to make a contract not operative within its jurisdiction and lawful where made; that a state may not enlarge the obligations of the parties nor may it adopt legislative policies in the effort to confer upon the state of the forum control over contractual obligations elsewhere consummated regardless of the relative importance of the interests of the forum as contrasted with those created at the place of the contract.
We do not perceive any tenable ground for the application of these conclusions in the instant case. As we have above pointed out no contractual obligations have been impaired by the Louisiana statute and no effort has been made to control the interpretation of the contract and a determination of the obligations thereunder. Much of this opinion has been devoted to a consideration of the laws of the State of Texas by reason of our recognition of the well established principle of lex loci contractus. For the reasons stated we maintained the validity of the contract and the obligations of the respective parties thereunder assumed. But now we come to a quite different and entirely distinct consideration which involves the equally unquestioned application of the lex fori to matters of remedy and procedure.
In the Hartford case the action was between the insured and the insurer and the holding of the court simply means that the provision of the policy as between the parties to the contract must be interpreted under the law of the place where the parties entered into the agreement. The rights of third parties were in nowise involved in the cited case and therefore the case is readily to be distinguished from the one before us, which involves the rights of third parties against the insurer of a tortfeasor.
In our opinion defendant cannot successfully urge that he has been deprived of any substantial rights flowing from the contract and therefore the contract cannot be said to have been impaired. Nor can defendant urge with any justice that he has been deprived of due process of law. Its answer admits that the service of process through the Secretary of State of the State of Louisiana was proper. The direct action statute of Louisiana has denied no right, no defense to this defendant, and it follows since it has subjected itself to the laws of the State of Louisiana with respect to procedure that its asserted defense *308 upon constitutional grounds is without merit.
In brief of defendant's counsel attention is called to the fact that in judgment of the lower court interest was erroneously allowed from date of October 28, 1948. Judicial demand was made by filing of plaintiff's petition on October 26, 1949, from which date, of course, interest should be allowed. The judgment should be amended to this extent.
For the reasons assigned the judgment from which appealed is amended by fixing the date of the beginning of the running of interest as of date of judicial demand, October 26, 1949, and as amended the judgment is affirmed, at appellant's cost.
KENNON, J., not participating.