76 So.2d 76 (1954)
Phil TALBOT et ux., Plaintiffs-Appellees,
v.
ALLSTATE INSURANCE COMPANY, Defendant-Appellant.
No. 8196.
Court of Appeal of Louisiana, Second Circuit.
October 29, 1954.
Rehearing Denied December 10, 1954.
*78 Jackson, Mayer & Kennedy, Shreveport, for appellant.
Love & Rigby, Shreveport, for appellees.
GLADNEY, Judge.
Plaintiff and his wife instituted this action in tort to recover for personal injuries received by Mrs. Talbot and resulting pecuniary losses including property damage to Talbot's automobile on November 21, 1951. Originally, Mr. and Mrs. M. C. Taylor, George Turley, Jr. and Allstate Insurance Company, the public liability carrier of George Turley, Jr., were made parties defendant. No service was obtained upon Mr. and Mrs. Taylor and proceedings against George Turley, Jr., were dismissed upon exceptions when it was established that there was no agency between George Turley, Jr. and Mrs. M. C. Taylor, who was the single occupant of Turley's car when the accident occurred. Therefore, when the case was tried before a jury the Allstate Insurance Company was the single defendant.
The defendant appellant in the course of its defense filed an exception of no cause or right of action, exceptor arguing in its support the law of Texas does not authorize a direct action such as was brought in the instant case and the policy expressly provided a suit against the insured shall be a condition precedent to the filing of an action against the insurer. This exception was not disposed of except by reference to the merits. Another exception of no cause or right of action was based on an averment that Mrs. Taylor did not have permission of the insured to use his automobile, and since the right of plaintiff to recover is predicated on the "omnibus clause" in the policy there was no right or cause of action. Defendant also filed a plea directed at the unconstitutionality of Louisiana's Direct Action Statute. Both the exceptions and the plea were denied by the district judge. The question of permission was submitted to the jury during the trial of the case. Following trial the jury rendered a verdict in favor of Phil Talbot for $1,200, and in favor of his wife, Mrs. Naomi Talbot, for $3,600. Defendant's motion for a new trial was overruled and appropriate orders of appeal to this court were then perfected. Plaintiff-appellee has filed an answer to the appeal in which it is asked that the amount of damages awarded in favor of both plaintiffs be increased.
Appellant in brief and argument does not seriously question the fault of Mrs. Taylor as constituting actionable negligence and only a brief reference here will be made to the facts and circumstances concerning the collision which precipitated this action. On November 21, 1951, about nine o'clock A. M., at which time the streets were wet from rain, Mrs. Talbot was driving her husband's automobile along Pierre Avenue in Shreveport in a southerly direction, when, having given signals that she would turn to the right into Garden Street, she was suddenly struck from the rear by the car driven by Mrs. Taylor. The verdict correctly placed the entire blame for the collision upon Mrs. Taylor. The doctrine of res ipsa loquitur is appropriate. Loprestie v. Roy Motors, Inc., 1938, 191 La. 239, 185 So. 11. Other authorities for finding Mrs. Taylor blameworthy are McDaniel v. Capitol Transport Company, Inc., La.App. 1948, 35 So.2d 38; Gandy v. Arrant, La. App.1951, 50 So.2d 676; and Reeves v. Caillouet, La.App.1950, 46 So.2d 373.
As a result of the collision, Mrs. Talbot received rather severe personal injuries which necessitated considerable medical expense and Mr. Talbot's car was substantially damaged. Whether or not the jury awards in favor of Mr. and Mrs. Talbot should be increased will be discussed hereafter.
*79 Appellant complains to this court the trial court erred in two particulars: (1) in failing to sustain the plea of unconstitutionality, and (2) in failing to sustain the defendant's exception of no cause or right of action, which latter contention embraces an assertion the jury was in error in returning a verdict in favor of the plaintiffs. By way of comment we may say the issues are thus confined to a question of the unconstitutionality of Louisiana's Direct Action Statute, and secondly, the question of whether or not Mrs. Taylor had the permission of Turley to use his automobile on the occasion when the accident occurred.
The plea of unconstitutionality arises from a clause in the public liability policy issued by Allstate Insurance Company to George C. Turley, Jr., a resident of the State of Texas where the policy, dated August 3, 1951, was delivered. The policy provided:
"No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after trial or by written agreement of the insured, the claimant and the company."
It is not disputed the above contractual obligation was valid and proper under the law of the State of Texas and no direct action against a public liability insurer is allowed in that state. Nor can it be denied that plaintiff's action against Allstate Insurance Company is authorized by Louisiana's Direct Action Statute. The Louisiana act was first passed as Act No. 55 of 1930. It was subsequently incorporated in the Insurance Code of 1948, and became a part of Louisiana Revised Statutes of 1950 as LSA-R.S. 22:655. The statute has been amended to provide for direct action against a liability insurer regardless of whether the policy is written or delivered in Louisiana; Act No. 541 of 1950, LSA-R.S. 22:655.
The constitutionality of the Direct Action Statute has been considered on numerous occasions by the appellate courts of this state and by Federal courts. The reasons for which defendant contends the statute is unconstitutional are declared to be:
"(a) That said Statute is in violation of Article I, Section 10 of the Constitution of the United States and Article 4, Section 15 of the Constitution of Louisiana of 1921 prohibiting the passage of legislation impairing the obligations of contracts.
"(b) That the aforesaid Statute is in violation of the due process clauses in violation of the due process clauses as set forth in the 5th and 14th amendments of the Constitution of the United States and Article I, Section 2 of the Constitution of Louisiana of 1921."
The courts of this state have repeatedly held that the statute does not impair the obligations of contracts and we have found no Louisiana state court decision to the contrary. Gager v. Teche Transfer Company, Inc., La.App.1932, 143 So. 62; Rossville Commercial Alcohol Corporation v. Dennis Sheen Transfer Co., Inc., 1931, 18 La.App. 725, 138 So. 183; Churchman v. Ingram, 1951-1952, 56 So.2d 297; McDowell v. National Sur. Corp., 1953, 68 So.2d 189.
The plea that the statute violates the due process clause has uniformly also been passed upon by our courts, including this court in Churchman v. Ingram, and in McDowell v. National Sur. Corp., a decision by the First Circuit Court of Appeal, cited supra. Judge Hardy, the organ of the court in Churchman v. Ingram, emphasized that Hartford Accident & Indemnity Company v. Delta & Pine Land Company, 292 U.S. 143, 54 S.Ct. 634, 78 L.Ed. 1178, strongly relied upon by defendant, was inapposite to the question involved, saying:
"In the Hartford case the action was between the insured and the insurer and the holding of the court simply means that the provision of the policy as between the parties to the contract *80 must be interpreted under the law of the place where the parties entered into the agreement. The rights of third parties were in nowise involved in the cited case and therefore the case is readily to be distinguished from the one before us, which involves the rights of third parties against the insurer of a tort-feasor." [56 So.2d 307.]
Furthermore, this court in Churchman v. Ingram, also disposed of the contention of defendant that he had been deprived of due process of law, declaring:
"Nor can defendant urge with any justice that he has been deprived of due process of law. Its answer admits that the service of process through the Secretary of State of the State of Louisiana was proper. The direct action statute of Louisiana has denied no right, no defense to this defendant, and it follows since it has subjected itself to the laws of the State of Louisiana with respect to procedure that its asserted defense upon constitutional grounds is without merit."
We are aware that in the Federal Court there presently exist two divergent lines of cases in which the validity of the Louisiana Direct Action Statute has been questioned. We are also informed by counsel that the Supreme Court of the United States is presently being called upon to decide whether or not this statute is valid in the case of Watson v. Employers Liability Assurance Corporation, D.C.1952, 107 F. Supp. 494. These constitutional issues have been discussed repeatedly both in Federal and Louisiana decisions. We see no reason to reiterate these legal principles or to attempt to reconcile the conflicting views expressed in the Federal courts. Both in Churchman v. Ingram, and McDowell v. National Sur. Corp., writs of certiorari were applied for and in each case denied by the Supreme Court of Louisiana. We adhere to the views expressed in those decisions.
Furthermore, in the instant case the defendant prior to the issuance of its policy to Turley, qualified to do business in the State of Louisiana and submitted a resolution of its Board of Directors consenting to be sued directly in Louisiana by an injured party. Such written consent was filed with the Secretary of State in accordance with the provisions of Act No. 542 of 1950, LSA-R.S. 22:983. Also we note the policy itself provides:
"22. Statutory Provisions. Terms of this policy which are in conflict with the statutes of the state wherein this policy is issued are hereby amended to conform to such statutes."
It was largely because of this proviso the district judge overruled the plea of unconstitutionality and in doing so he cited as authorities: Abilene National Bank v. Dolley, Bank Commissioner, 228 U.S. 1, 33 S.Ct. 409, 57 L.Ed. 707; Chicago B. & Q. R. Co. v. Cram, 228 U.S. 70, 33 S.Ct. 437, 57 L.Ed. 734-741; Churchman v. Ingram, supra; and McDowell v. National Sur. Corp., supra.
Therefore, we conclude that the plea of unconstitutionality was properly denied.
The remaining contention of the defense is that the defendant cannot be held liable under the so-called "omnibus clause" contained in the policy, which provides:
"With respect to the insurance for bodily injury liability and for property damage liability the unqualified word `insured' includes the named insured and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission."
The validity of defendant's argument depends upon the construction to be given the word "permission". Whether or not such permission was granted by Turley to Mrs. Taylor must be ascertained from all the facts and circumstances surrounding her use of his automobile.
In commenting on this point, Mr. Ben R. Miller, in 15 Tulane Law Review, 222, *81 divided the Louisiana decisions in which the court had occasion to consider the limitations of the omnibus clause into three principal classes:
"1. That only `permission', express or implied, at the outset, or initially, is necessary.
"2. That such `initial' permission alone does not suffice and that the nature of the particular deviation will be considered, with `material' deviations destroying that initial permission. The various courts in this group differ widely on what are `material' deviations.
"3. That the particular use of the automobile at the moment of the accident must have been with the express or implied `permission' of the assured."
Plaintiff earnestly contends that the instant case falls within the first class, that is to say, Mrs. Taylor had express or implied permission from Turley at the outset, or initially, to use the automobile. The "initial permission" rule has been applied in the following cases:
Parks v. Hall, 1938, 189 La. 849, 181 So. 191; Stanley v. Cryer Drilling Co., 1948, 213 La. 980, 35 So.2d 9; Waits v. Indemnity Insurance Co. of North America, 1949, 215 La. 349, 40 So.2d 746; Dominguez v. American Casualty Co., 1950, 217 La. 487, 46 So. 2d 744; Haeuser v. Aetna Casualty & Surety Co., La.App., Orl., 1939, 187 So. 684; Sun Underwriters Ins. Co. v. Standard Accident Ins. Co. of Detroit, Mich., La.App., Orl., 1950, 47 So.2d 133.
The following facts are pertinent to a resolution of the question of whether or not Mrs. Taylor had permission to use Mr. Turley's automobile: Mr. and Mrs. Turley, residents of Houston, Texas, came to visit Mr. and Mrs. Taylor, who were residing in Bossier City. Mrs. Turley and Mrs. Taylor are sisters. On the evening before the accident the Turleys arrived in Shreveport and not knowing how to get to the Taylor residence, `phoned the Taylors to come and meet them. After this was done Mrs. Taylor drove Mrs. Turley to the Taylor home in the Turley car and Mr. Turley rode in the Taylor car. Arriving at the Taylor home, the Turley car was parked in the driveway. The couple spent the night at the Taylor home. On the following morning Mr. Turley accompanied Mr. Taylor to his office in the Taylor automobile, leaving his own automobile and the keys to it at the Taylor home. Later Mrs. Taylor drove the Turley automobile for the purpose of getting her domestic maid and while on this mission the accident with the Talbot car occurred.
Mr. Turley testified to the facts above outlined and further testified that he could not recall what he had intended to do with the keys, stating that he thought he must have left his keys lying on the dresser. He could not recall whether he had left the keys there for his wife on that particular occasion, but that he customarily did so. He did not recall whether Mrs. Taylor had returned the keys to him or not. He stated he did not give any express consent for Mrs. Taylor to use the automobile, but he would have had no objection to her taking it and that had he been there he probably would have gone on the trip with her. On no occasion did he ever protest the use of his car by Mrs. Taylor. Mrs. Taylor's testimony was substantially in accord with the testimony of Turley.
Plaintiff's counsel argue that permission means merely the license to do a thing and that such license, either express or implied, falls within the language of the omnibus clause, which provides:
"* * * provided the actual use of the automobile is by the named insured or with his permission."
Because of the relationship between Mrs. Taylor and Mrs. Turley, they being sisters, the Turleys being the house guests of the Taylors, and the keys to the Turley car having been left at the Taylor residence and were there when Mr. Taylor and Mr. Turley left for the purpose of going to Mr. Taylor's office in the Taylor automobile these facts certainly disclose the absence of any objection by Turley to the use of his *82 car by Mrs. Taylor, and Turley so testified. We are of the opinion that these facts alone conferred an implied permission on the part of the owner.
The evidence does not disclose that after Mrs. Taylor drove the Turley car to their home on the evening prior to the accident that anyone else drove the Turley car before Mrs. Taylor undertook the mission during which the collision occurred. We are of the opinion that the facts herein established bring the instant case within the rulings of Parks v. Hall, Stanley v. Cryer Drilling Co., Waits v. Indemnity Insurance Co. of North America, Dominguez v. American Casualty Co., and Sun Underwriters Ins. Co. v. Standard Accident Ins. Co. of Detroit, Michigan, all cited supra. Our conclusion is that recovery by the Talbots may be allowed under the provisions of the "omnibus clause" in the policy issued by Allstate Insurance Company to George Turley. It follows there was no error in the findings of the district judge and the jury that Mrs. Taylor had permission to use the Turley automobile on the occasion of the accident.
There remains only the question of quantum. By answer to the appeal, each plaintiff has asked an increase in damages awarded in the jury verdict which allowed Mrs. Talbot the sum of $3,600 and her husband $1,200.
No rule of thumb can govern every case as to quantum. The injuries of each litigant must be considered and the award of damages should be measured according to the disabilities and pecuniary losses sustained by the individual claimant.
The record shows Mrs. Talbot suffered painful and severe injuries to her chest, back, left knee, left shoulder and arm, and some disturbance of the second, third, fourth, fifth and sixth cervical vertebrae and to the nerves supplying the left shoulder and arm. All of the injuries, however, with the possible exception of the shoulder and arm disability were substantially healed at the time of trial. It appears plaintiff will have some permanent disability in the left shoulder and arm, and some intermittent pains in her back. The jury award, we think, properly appraised her injuries and disability in rendering a verdict for $3,600, a sum which we consider adequate. Therefore, the verdict in her favor will not be disturbed.
In awarding $1,200 in favor of plaintiff, Phil Talbot, the jury evidently denied recovery of $1,945.32 for loss of his wife's earnings. He adduced evidence to show his total damages to be $3,139.76. To prove this differential a comparison of Mrs. Talbot's earnings prior to and after the accident was presented. Just what items of damages were approved by the jury and included in the award of $1,200 is not clear from the record, although it appears the jury denied the claim for loss of earnings. Notwithstanding this hypothesis, after careful consideration, we have concluded the jury award was fair and adequate and should not be disturbed.
It therefore follows from the foregoing findings, the judgment from which appealed should be affirmed at appellant's cost.