STANDARD DREDGING CORPORATION *v.* MUR-
PHY, ACTING INDUSTRIAL COMMISSIONER,
ET AL.*

No. 722. Argued May 5, 1943.—Decided May 24, 1943.

*Mr. Cletus Keating,* with whom *Messrs. H. Maurice Fridlund* and *Charles S. Cunningham* were on the brief, for appellant in No. 722; and *Mr. Robert B. Lisle,* with whom *Messrs. Arthur E. Goddard* and *Jules Haberman* were on the brief, for appellant in No. 723.

---

*Together with No. 723, *International Elevating Co.* v. *Murphy, Acting Industrial Commissioner, et al.,* also on appeal from the Supreme Court of New York, Appellate Division, Third Department.

*Mr. Orrin G. Judd,* Solicitor General of New York, with whom *Messrs. Nathaniel L. Goldstein,* Attorney General, *William Gerard Ryan,* and *Francis R. Curran,* Assistant Attorneys General, were on the brief, for appellees.

Briefs of *amici curiae* were filed by *Mr. Matthew S. Gibson* on behalf of the Gulf Oil Corporation, urging reversal; and by *Solicitor General Fahy, Assistant Attorney General Samuel O. Clark, Jr.,* and *Messrs. Sewall Key, Robert L. Stern,* and *Jack B. Tate* on behalf of the United States, urging affirmance.

MR. JUSTICE BLACK delivered the opinion of the Court.

The issue in these cases is whether the New York Unemployment Insurance tax may be collected from employers of certain employees engaged in maritime employment on the wages of those employees. The New York Act levies a payroll tax on all employers of four or more persons, with exceptions not here material, and the sum thus collected is paid into a general fund for the benefit of all unemployed persons covered.[1] The employee in 722 is an assistant cook on a dredge, and the employee in 723 is a grain worker on a floating elevator. The vessels on which both employees served were engaged primarily on work in the waters of the state of New York during the tax period. The appellants challenge the validity of the statute as applied on two grounds: (1) imposition of the tax on maritime employees violates Article 3, § 2 of the Constitution, which gives federal courts exclusive admiralty jurisdiction; (2) Congress has declared either expressly or by implication that no such tax shall be imposed on maritime employers. No other questions of jurisdiction to tax are before us. The New York Court of Appeals

---

[1] For a description of the New York act, see *Chamberlain, Inc.* v. *Andrews,* 271 N. Y. 1, 2 N. E. 2d 22; 299 U. S. 515.

overruled both these contentions[2] and the cases are here on appeal under § 237 (a) of the Judicial Code.

In approaching this problem, we may put aside two questions at the beginning. It is contended that these two employees are not "members of a crew" and hence are outside the scope both of admiralty jurisdiction and of the relevant statutes.[3] In the view we take, it is immaterial whether or not the employees are crew members. We also need not consider whether these taxes affect interstate or foreign commerce, since Congress has expressly provided that a state shall not be prohibited from levying the tax because the employer is engaged in interstate or foreign commerce, 26 U. S. C. 1600; *Perkins* v. *Pennsylvania,* 314 U. S. 586. The added contention that a vessel's federal license may bar state taxation is only another form of the argument that the tax burdens interstate commerce,[4] and need not be considered separately.

That the state is vested with power to impose taxes in general upon employers to alleviate unemployment, and that the authority of the state is in no wise impaired by reason of blending the imposition of a tax with the relief of unemployment has already been decided by this Court. *Carmichael* v. *Southern Coal Co.,* 301 U. S. 495; *Steward*

[2] 289 N. Y. 119, 44 N. E. 2d 391.

[3] The employees here, because of the nature of their work, are arguably not within the scope of that portion of admiralty jurisdiction which has been said to be necessarily exclusive. Cf. *Davis* v. *Department of Labor,* 317 U. S. 249. On the other hand, certain decisions of the Bureau of Internal Revenue might provide the basis for contention that these employees are "members of a crew" within the meaning of the federal act. As to whether a dredge is a vessel, see S. S. T. 78, C. B. 1937–1, 408; as to whether a floating grain elevator is a vessel and whether a grain processor is a member of a crew, see S. S. T. 204, C. B. 1937–2, 427; S. S. T. 210, C. B. 1937–2, 429.

[4] Counsel refers us to *Gibbons* v. *Ogden,* 9 Wheat. 1; *Hall* v. *DeCuir,* 95 U. S. 485; *Moran* v. *New Orleans,* 112 U. S. 69; *Helson* v. *Kentucky,* 279 U. S. 245; *Southern Pacific Co.* v. *Gallagher,* 306 U. S. 167.

*Machine Co.* v. *Davis,* 301 U. S. 548. In a series of cases, however, beginning with *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205, this Court called attention to the necessity of uniformity in certain aspects of maritime law, and invalidated several state workmen's compensation acts as applied on the ground that their enforcement would interfere with that essential uniformity. We are now asked to apply the *Jensen* doctrine to the field of unemployment insurance and to invalidate the statute before us on the ground that it is destructive of admiralty uniformity. The effect on admiralty of an unemployment insurance program is so markedly different from the effect which it was feared might follow from workmen's compensation legislation that we find no reason to expand the *Jensen* doctrine into this new area. Indeed, the *Jensen* case has already been severely limited,[5] and has no vitality beyond that which may continue as to state workmen's compensation laws. Cf. *Parker* v. *Motor Boat Sales,* 314 U. S. 244.

Granting that the federal government might choose to operate its own uniform unemployment insurance system for maritime workers if it chose,[6] "Uniformity is required only when the essential features of an exclusive federal jurisdiction are involved." *Just* v. *Chambers,* 312 U. S. 383, 392. When state compensation laws began to provide a remedy for maritime torts, it was at least arguable that the state remedy interfered with the existing admiralty system of relief through actions such as maintenance and cure. But in dealing with unemployment in-

---

[5] *Just* v. *Chambers,* 312 U. S. 383; *Davis* v. *Department of Labor, supra,* and, for an account of the development of the Jensen doctrine, 252, 253.

[6] Cf. 46 U. S. C. § 688 (the Jones Act, dealing with recovery for injuries by seamen); 33 U. S. C. §§ 901–950 (the Longshoremen's and Harborworkers' Act dealing with recovery for injuries by longshoremen and harborworkers).

surance "exclusive federal jurisdiction" is not affected at all. Congress retains the power to act in the field, and in the meantime, federal courts have nothing to do with it. No principle of admiralty requires uniformity of state taxation. Taxes on vessels and other business activities of operators have previously been upheld.[7] We hold that nothing in Article 3, § 2 of the Constitution places this tax beyond the authority of the State.

The second contention is that the federal Act precludes coverage of these employers by the state. Title 9 of the Federal Social Security Act (26 U. S. C. §§ 1600–11) taxes employers of eight or more employees but provides for a 90% credit against this federal tax for payments made into a state unemployment fund approved by the federal government. 26 U. S. C. §1607 exempts from this federal tax certain types of employers of persons including those employed "as an officer or member of the crew of a vessel on the navigable waters of the United States." We do not believe that the exemption of these employers from the federal Act can operate to exempt them from state unemployment insurance taxes. The federal Act, from the nature of its ninety per cent credit device, is obviously an invitation to the states to enter the field of unemployment insurance, *Buckstaff Bath House Co.* v. *McKinley,* 308 U. S. 358, 363, but the absence of an invitation as to employers of maritime workers is not to be construed as a barrier to state action. These employers appear to have been exempted from the federal Act because of certain administrative difficulties involved in their coverage, and because of some doubt that states could, under the *Jensen* line of cases, constitutionally enter this field;[8] but we are

---

[7] *Southern Pacific Co.* v. *Kentucky,* 222 U. S. 63; *Old Dominion Steamship Co.* v. *Virginia,* 198 U. S. 299.

[8] The provision exempting officers and members of crews from the federal unemployment insurance tax are similar to those in Titles II and VIII of the Social Security Act, dealing with the old age retirement

pointed to nothing in the legislative history of the Act which indicates that Congress meant to forbid a state from risking the possible constitutional barriers to state coverage, and undertaking the difficult administrative task. The legislative history of other exemptions may indicate that they were intended to oust the states of jurisdiction—on this question we need express no opinion now; but current administrative practice under the Act indicates that there is nothing in the mere existence of a federal exemption which necessarily required that states not undertake to expand the social security program in this field. The federal Act covers only employers of eight or more persons; approximately one-half the states cover employers with fewer employees. Several states cover casual laborers and domestic servants, both groups exempted by the section of the federal Act which includes the exemption of maritime workers.

Employers of maritime workers, otherwise subject to state unemployment insurance taxing acts, are not excluded from the coverage of such acts either by Article 3, § 2 of the Constitution, or by Congressional enactments.

*Affirmed.*

---

pensions. Cf. 53 Stat. 1384, repealing the exemption as to certain maritime workers for old age retirement purposes. The report of the Ways and Means Committee of the House of Representatives on the original Act indicates that the exception was based on the anticipation of administrative difficulties. House Report 615, 74th Cong., 1st Sess., 33. There was also some fear of possible constitutional objection to state coverage of maritime employees. See statements of Rep. Vinson and Rep. McCormack, 79 Cong. Rec. 5903.