**BUXTON v. MIDWESTERN INS. CO. et al.**
**Civ. A. No. 3434.**

United States District Court
W. D. Louisiana, Lake Charles Division.
Jan. 11, 1952.

502

Nathan A. Cormie and Carmouche, Martin & Wilson, all of Lake Charles, La., for plaintiff.

Plauche & Stockwell, Lake Charles, La., for Midwestern Ins. Co.

Thompson, Lawes, Cavanaugh & Hickman, Lake Charles, La., for Pacific Employers Ins. Co.

PORTERIE, District Judge.

Plaintiff, a Louisiana citizen, sues for $66,300.00, plus interest and costs, for personal injuries sustained on July 20, 1951, when a 1950 Chevrolet coach automobile, owned and then being driven by Richard A. Parker and insured by Midwestern Insurance Company (hereafter called Midwestern), an Illinois corporation, in which she was a guest, was involved in a collision on a Louisiana highway (U. S. 90), near Lake

Charles, Louisiana, with a 1949 Ford coach automobile, owned by Houston Oil Field Material Company, Inc. (hereafter called Houston), a Delaware corporation, then being driven by one B. R. Nelson with Houston's permission and insured by Pacific Employers Insurance Company (hereafter called Pacific), a California corporation.

The defendants, Midwestern and Pacific,. non-resident insurance companies, authorized to transact insurance business in this. State,[1] were served and cited through the Secretary of State of Louisiana, on September 27, 1951, as public liability insurers. of the two automobiles.

This Court, therefore, has jurisdiction;: there is diversity and the requisite amount.. 28 U.S.C. § 1332, 28 U.S.C.A. § 1332.

Pacific moved to dismiss the complaint and for a summary judgment, based on identical grounds, hereinafter set forth, which is the issue now before us. The uncontroverted and admitted facts, necessary to the disposition of the motion for summary judgment—besides those hereinabove stated—, are these.

Effective January 1, 1951, for over $12,-000.00 worth of premiums,[2] Pacific issued and delivered its policy of comprehensive automobile liability insurance to Houston[3] and Houston Oil Field Material Company, Inc. of California (hereafter called Houston, et al.) in Houston, in the State of Texas, with limits of $150,000/300,000 bodily. injury and $10,000 property damage. The policy (a copy of which Pacific filed in the

1. The record shows that Pacific qualified to do business in this State, and has been doing business here, since March 29, 1940.

2. "The modern insurance business holds a commanding position in the trade and commerce of our Nation. Built upon the sale of contracts of indemnity, it has become one of the largest and most important branches of commerce. Its total assets exceed $37,000,000,000, or the approximate equivalent of the value of all farm lands and buildings in the United States. Its annual premium receipts exceed $6,000,000,000, more than the average annual revenue receipts of the United States Government during the last decade. Included in the labor force of in-

surance are 524,000 experienced workers, almost as many as seek their livings in coal mining or automobile manufacturing. Perhaps no modern commercial enterprise directly affects so many persons in all walks of life as does the insurance business. Insurance touches the home, the family, and the occupation or the business of almost every person in the United States." United States v. South-Eastern Underwriters Ass'n, 322 U.S. 533, 64 S.Ct. 1162, 1166, 1166–1167, 88 L.Ed. 1440. (Footnotes to quoted passage omitted.)

3. The record shows that Houston qualified to do business in this State, and has been doing business here, since April 7, 1937.

record) applies to accidents which occur within the United States, its territories or possessions. Canada or Newfoundland and while the automobiles are being transported between ports thereof. An endorsement (No. 7) extends it to accidents within certain distances in the Republic of Mexico.[4]

Schedule B–1 of the policy lists 37 automobiles and 7 trucks with Louisiana as being the "State in Which the Automobile will be Principally Garaged". Then premiums are charged for coverage of "Hired Automobiles", if any, in Louisiana; as also for "Non-Owned Automobiles" and it appears six of these give Louisiana addresses.

There is an "Endorsement [No. 8] for Motor Carrier Policies of Insurance for Bodily Injury Liability, and Property Damage Liability, under Section 4 of Act No. 301 of the Louisiana Legislature of 1938 [LSA–R.S. 45:163]".

We quote further the following pertinent provisions of the policy:

"2. Inspection and Audit The company shall be permitted to inspect the insured premises, operations, automobiles and elevators and to examine and audit the insured's books and records at any time during the policy period and any extension thereof and within three years after the final termination of this policy, as far as they relate to the premium bases or the subject matter of this insurance.

\* \* \* \* \* \*

"8. Financial Responsibility Laws Coverages A and C. Such insurance as is afforded by this policy for bodily injury liability or property damage liability shall comply with the provisions of the motor vehicle financial responsibility law of any state or province which shall be applicable with respect to any such liability arising out of the ownership, maintenance or use during the policy period of any automobile insured hereunder, to the extent of the coverage and limits of liability required by such law, but in no event in excess of the limits of liability stated in this policy. The insured agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph.

\* \* \* \* \* \*

"10. Notice of Claim or Suit. If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

"11: Assistance and Cooperation of the Insured. The insured shall cooperate with the company and, upon the company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of accident.

"12. Action Against Company. No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company.

"Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afford-

4. "These basic elements in the insurance business attain special significance in the case of enterprises operating not only in [Louisiana] Virginia but in other states as well. For them the brokerage system offers the attractions of large-scale production. Through what is known as a master or 'hotchpotch' policy, the assured may obtain a cheaper rate by pooling all his risks, whether in or out of [Louisi- ana] Virginia. This wholesale insurance may furnish not only a reduced rate but a reduced commission to the customer. These are advantages which naturally draw the [Louisiana] Virginia business of interstate enterprises away from local agents in [Louisiana] Virginia to the great insurance centers." Osborn v. Oz- lin, 310 U.S. 53, 60 S.Ct. 758, 761, 84 L.Ed. 1074.

504

ed by this policy. Nothing contained in this policy shall give any person or organization any right to join the company as a co-defendant in any action against the insured to determine the insured's liability.

"Bankruptcy or insolvency of the insured or of the insured's estate shall not relieve the company of any of its obligations hereunder."

This latter provision (No. 12) is the "no action clause".

Pacific contends that, since its policy was issued and delivered in the State of Texas, where a "no action clause" in a policy is valid and enforceable, the Louisiana law permitting direct action against the insurer is not applicable; that, alternatively, if the Louisiana law is applied, as to Pacific that law would be unconstitutional in that: it would impair the obligations of the insurance contract, Art. I, Sec. 10, U.S. Const.; Art. 4, § 15, La.Const. of 1921; it would violate the Full Faith and Credit Clause, Art. IV, Sec. 1, U.S.Const.; and it would deny due process and equal protection of the laws. Amendment XIV, Sec. 1, U.S.Const.

The pertinent Louisiana statutes, in force at the time of the delivery and issuance of Pacific's policy, at the time of the accident, at the time of the filing of this complaint, and now, provide as follows:

"Section 1. Be it enacted by the Legislature of Louisiana that Section 655 of Title 22, Louisiana Revised Statutes of 1950 is hereby amended and reenacted to read as follows:

"Section 655. No policy or contract of liability insurance shall be issued or delivered in this state, unless it contains provisions to the effect that the insolvency or bankruptcy of the insured, shall not release the insurer from the payment of damages for injuries sustained or loss occasioned during the existence of the policy, and any judgment which may be rendered against the insured for which the insurer is liable which shall have become executory, shall be deemed prima facie evidence of the insolvency of the insured, and an action may thereafter be maintained within the terms and limits of the policy by the injured person or his or her heirs against the insurer.

The injured person or his or her heirs, at their option, shall have a right of direct action against the insurer within the terms and limits of the policy in the parish where the accident or injury occurred or in the parish where the insured has his domicile, and said action may be brought against the insurer alone or against both the insured and the insurer, jointly and in solido. *This right of direct action shall exist whether the policy of insurance sued upon was written or delivered in the State of Louisiana or not and whether or not such policy contains a provision forbidding such direct action, provided the accident or injury occurred within the State of Louisiana.* Nothing contained in this section shall be construed to affect the provisions of the policy or contract if the same are not in violation of the laws of this state. It is the intent of this section that any action brought hereunder shall be subject to all of the lawful conditions of the policy or contract and the defenses which could be urged by the insurer to a direct action brought by the insured provided the terms and conditions of such policy or contract are not in violation of the laws of this state.

"Section 2. All laws or parts of laws in conflict herewith are hereby repealed." La. Act No. 541 of 1950, LSA–R.S. 22:655. (Emphasis supplied.)

"Section 1. Be it enacted by the Legislature of Louisiana that Section 983 of Title 22, Louisiana Revised Statutes of 1950 is hereby amended to add after Subsection "D" a new subsection to be captioned subsection "E" and to read as follows:

"E—No certificate of authority to do business in Louisiana shall be issued to a foreign or alien liability insurer until such insurer shall consent to being sued by the injured person or his or her heirs in a direct action as provided in Section 655 of this title, whether the policy of insurance sued upon was written or delivered in the State of Louisiana or not, and whether or not such policy contains a provision forbidding such direct action, provided that the accident or injury occurred within the State of Louisiana. The said foreign or alien insurer shall deliver to the Secretary of State as a condition precedent to the issu-

ance of such authority, an instrument evidencing such consent." La. Act No. 542 of 1950, LSA–R.S. 22:983.

Accordingly, all previous Louisiana statutes dealing with the direct action, La. Act 55 of 1930; La. Act 195 of 1948, §§ 14.45, 21.03 (See § 32.01, which repeals La. "Act 253 of 1918, as amended", which, of course, is La. Act 55 of 1930); Louisiana Revised Statutes of 1950, Title 22, Sections 655 and 983, before the reenactment and amendment, respectively, by La. Acts 541 and 542 of 1950, are, if not expressly, at least impliedly repealed, overridden, and replaced by Louisiana Acts 541 and 542 of 1950, effective July 27, 1950.

Further, under the facts of this case—the time factors; such as, the time the policy was issued and delivered, the time of the accident, etc.—, we need not concern ourselves with the question of whether or not Louisiana Acts 541 and 542 of 1950 are remedial in the sense that they are retroactive. See, Belanger v. Great American Indemnity Co. of New York, D.C., 89 F. Supp. 736, affirmed 5 Cir., 188 F.2d 196; contra, Bouis v. Ætna Casualty & Surety Co., D.C., 91 F.Supp. 954; but see, Bayard v. Traders & General Insurance Co., D.C., 99 F.Supp. 343.

We confine our inquiry to that question left open—that issue which was postponed or not reached—in the Belanger case, supra, on appeal, with the following language: "Since this reason [that under the then existing statute (LSA–R.S. 22:655—before La. Acts 541 and 542 of 1950 were in effect), the insurer could not be sued directly under the facts] supports the judgment of the trial Court, there is no occasion for any discussion of the constitutional question and we obey the sound and well established rule which enjoins judicial abstention from a determination of the constitutional validity of statutes except where absolutely necessary for a determination of the case." 188 F.2d 196, 198.

The other language used and the result or conclusion reached in the Belanger case, supra, must be read in the light of the facts then under consideration and the law then existing. Thus, the results or conclusions

in the instant case and the Belanger case, supra, are wholly consistent.

Our question, therefore, is the "constitutional validity" of Louisiana Acts 541 and 542 of 1950. If they are valid, Pacific is to remain in court; if not, the action as to it must be dismissed.

The strong language contained in the very first two sentences of the United States Supreme Court in United States v. South-Eastern Underwriters Ass'n, 322 U.S. 533, 64 S.Ct. 1162, 1164, 88 L.Ed. 1440, is as follows: "For seventy-five years this Court has held, whenever the question has been presented, that the Commerce Clause of the Constitution does not deprive the individual states of power to *regulate* and tax specific activities of foreign insurance companies which sell policies within their territories. Each state has been held to have this power even though negotiation and execution of the companies' policy contracts involved communications of information and movements of persons, moneys, and papers across state lines." (Emphasis supplied.)

The United States Supreme Court in the Underwriters case, supra, held insurance to be commerce and that business covered by the anti-trust laws. See, also, Polish Nat. Alliance, etc., v. National Labor Rel. Board, 322 U.S. 643, 64 S.Ct. 1196, 88 L.Ed. 1509. Five months to the day after rehearing was denied in the Underwriters case, supra, 323 U.S. 811, 65 Sup.Ct. 26, 89 L.Ed. 646, the Congress of the United States, on March 9, 1945, enacted Public Law 15 of that year: "To express the intent of the Congress with reference to the regulation of the business of insurance", providing in pertinent part, as follows:

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That the Congress hereby declares that the continued *regulation* and taxation *by the several States of the business of insurance is in the public interest,* and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States.

506

"Sec. 2. (a) The business of insurance, and every person engaged therein, *shall* be subject to the laws of the several States which relate to the *regulation* or taxation of such business.

"(b) No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance". 59 Stat. 33, c. 20, 15 U.S.C. §§ 1011, 1012, 15 U.S.C.A. §§ 1011, 1012. (Emphasis supplied.)

■ "It is no longer debatable that Congress, in the exercise of the commerce power, may authorize the states, in specified ways, to regulate interstate commerce or impose burdens upon it. Kentucky Whip & Collar Co. v. Illinois Central R. Co., 299 U.S. 334, 57 S.Ct. 277, 81 L.Ed. 270; Perkins v. Pennsylvania, 314 U.S. 586, 62 S.Ct. 484, 86 L.Ed. 473; Standard Dredging Corp. v. Murphy, 319 U.S. 306, 308, 63 S.Ct. 1067, 1068, 87 L.Ed. 1416; Hooven & Allison v. Evatt [Co.], 324 U.S. 652, 679, 65 S.Ct. 870, 883, [89 L.Ed. 1252]; Southern Pacific Co. v. Arizona, 325 U.S. 761, 769, 65 S.Ct. 1515, 1520 [89 L.Ed. 1915]." International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 158, 90 L.Ed. 95, 161 A.L.R. 1057.

See, also, Prudential Ins. Co. v. Benjamin, 328 U.S. 408, 66 S.Ct. 1142, 90 L.Ed. 1342, 164 A.L.R. 476; Robertson v. People of State of California, 328 U.S. 440, 66 S. Ct. 1160, 90 L.Ed. 1366; Panhandle Eastern Pipe Line Co. v. Public Serv. Comm., 332 U.S. 507, 68 S.Ct. 190, 92 L.Ed. 128; North Little Rock Tr. Co. v. Casualty Recip. Exch., 8 Cir., 181 F.2d 174.

The very year after the enactment of the McCarran Act the Legislature of Louisiana made provisions for the drafting of an Insurance Code. La. Act 211 of 1946. The very interesting preamble to this Act refers to the Underwriters case, supra, as also to the above-quoted Act of Congress (the McCarran Act).

"Insurance is a business affected by the public interest and it is the purpose of this Code to regulate that business in all its phases." La. Act 195 of 1948, Sec. 1.02, La.R.S. of 1950, Title 22, § 2, LSA–R.S. Thus began the Louisiana law on insurance after being given a name. Insurance is a "* * * business affected with a *vast* public interest * * *". Prudential Ins. Co. v. Benjamin, 328 U.S. 408, 66 S.Ct. 1142, 1147, 90 L.Ed. 1342, 164 A.L.R. 476.

May Louisiana say that: "This right of direct action shall exist whether the policy of insurance sued upon was written or delivered in the State of Louisiana or not and whether or not such policy contains a provision forbidding such direct action, provided the accident or injury occurred within the State of Louisiana"? La. Act 541 of 1950, § 1, La.R.S. 22:655, LSA–R.S.

If not, and pretermitting the answer to that question, may Pacific refuse to be sued directly by a Louisiana resident, injured in Louisiana, on a Louisiana highway, when it consented to this direct action on policies issued outside of Louisiana, as the price of doing business in Louisiana?

Stated differently, may plaintiff, a Louisiana citizen, injured in Louisiana, on a Louisiana highway, hold Pacific to its consent to be sued directly for the torts of its insured using Louisiana highways, etc.—which consent Pacific gave to the State of Louisiana, for plaintiff's benefit, as the price of, or consideration for, doing business here? See La. Act 542 of 1950, § 1, La.R.S. 22:983, subd. E, LSA–R.S.

We do not think Pacific may give consent to be so sued in one breath, in order to do business here, and then in another breath object to being so sued.

■ Pacific consented to this direct action "* * * in return for the privilege of doing local business. * * * The consent, therefore, extends to any court sitting in the state which applies the laws of the state." Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 60 S.Ct. 153, 155, 156, 84 L.Ed. 167, 128 A.L.R. 1437.

That consent is a type of contract, the execution of which was Pacific's voluntary act. Pennsylvania Fire Ins. Co. v. Gold Issue Mining Co., 243 U.S. 93, 37 S.Ct.

.344, 61 L.Ed. 610; Cf. Merchants' Mut. Automobile Liability Ins. Co. v. Smart, .267 U.S. 126, 45 S.Ct. 320, 321, 69 L.Ed. .538.

 Even assuming, without deciding, ·that the right not to be sued directly under its policy, valid where executed, is a substantive right under its contract,[5] we are ·of the opinion that it voluntarily relinquished that right as the price of doing business here, which is a permissible regulation of the business of insurance by Louisiana, as insurance is a business affected by the public interest, 15 U.S.C. §§ 1011, 1012, 15 U.S.C.A. §§ 1011, 1012; La. R.S. 22:2, LSA-R.S.; Prudential Ins. Co. v. Benjamin, 328 U.S. 408, 66 S.Ct. 1142, ·90 L.Ed. 1342, 164 A.L.R. 476, and cases there cited, and "[n]o· person shall trans-.act a business of insurance in this state without complying with the provisions of this Code." La.R.S. 22:3, LSA-R.S., in view of " '* * * the public policy of this State that an insurance policy against liability is not issued primarily for the protection of the insured but for the protection of the public.' " West v. Monroe Bakery, 217 La. 189, 46 So.2d 122, 130. (Emphasis by the Court.) See also, Pennsylvania Fire Ins. Co. v. Gold Issue Mining Co., 243 U.S. 93, 37 S.Ct. 344, 61 L.Ed. 610; La Tourette v. McMaster, 248 U.S. 465, 39 S.Ct. 160, 63 L.Ed. 362.

The statute, La. Act 542 of 1950, does *not* go " * * * beyond any legitimate interest of the State". Fidelity & Deposit Co. v. Tafoya, 270 U.S. 426, 46 S.Ct. 331, 332, 70 L.Ed. 664.

"Having no absolute right of recognition in other States, but depending for such recognition and the enforcement of its contracts upon their assent, it follows, as a matter of course, that such assent may be granted upon such terms and conditions as those States may think proper to impose. They may exclude the foreign corporation entirely; they may restrict its business to particular localities, or they may exact such security for the performance of its contracts with their citizens as in their judgment will best promote the public interest. *The whole matter rests in their discretion.*" Paul v. Virginia, 8 Wall. 168, 19 L.Ed. 357, 360; Cf. United States v. South-Eastern Underwriters Ass'n, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440; Prudential Ins. Co. v. Benjamin, 328 U.S. 408, 66 S.Ct. 1142, 90 L.Ed. 1342, 164 A.L. R. 476; California State Auto Ass'n Inter-Ins. Bureau v. Maloney, 341 U.S. 105, 71 S.Ct. 601, 95 L.Ed. 496.

 The insured, Houston or Houston, et al., and Nelson, or any or either of them, could rightfully have been sued here. La. Act 184 of 1932, La.R.S. 13:3474, 13:3475, LSA-R.S.; Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091; Young v. Masci, 289 U.S. 253, 53 S.Ct. 599, 77 L.Ed. 1158, 88 A.L.R. 170; Cf. Kane v. New Jersey, 242 U.S. 160, 37 S.Ct. 30, 61 L.Ed. 222; Hendrick v. Maryland, 235 U.S. 610, 35 S.Ct. 140, 59 L.Ed. 385.

 The insurer, Pacific, can rightfully be sued here also. It is found here. Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167, 128 A.L.R. 1437, and cases there cited. Besides that, its insured, Houston, at the time of the delivery and insurance of the policy here under consideration, was intending to use, the policy contemplated Houston's use of, and, in fact, at the time of the accident here involved, Houston was using, Louisiana highways.

The State of Louisiana, for the protection of its citizens, and perhaps for the protection of the public generally while in this State, on its own public roads, requires all insurers alike to consent to this type of action beforehand, and voluntarily, as the price of doing business here. Pacific, in Rome, must do as the Roman. It consented then; it must deliver now. It cannot say yes or I do in one breath and no or I do not or will not in another.

Consequently, we do not reach—and need not overreach to inquire into—the constitutional objections raised by Pacific.

 In other words, there is no impairment of the obligations of its insurance

5. In appraising the jurisprudence, the distinction between what is a substantive right under a contract and what is substantive law is important.

contract with Houston, because, at the time of the confection of that contract affected by the public interest, Pacific was doing business in Louisiana and by its own voluntary consent it never became an obligation to the impaired.

It does not impair any of Houston's obligations, as it is not an obligation of Houston's under that contract; besides, Houston is not before us.

There is no violation of the Full Faith and Credit Clause by the enactment and enforcement of Louisiana Act 542 of 1950. The voluntary consent to Louisiana laws and policies beforehand by Pacific eliminates the contention of a violation.

We are not told how Pacific is denied due process of law; nor do we see where it is denied, under the facts of this case.

"2. State regulation of the insurance business has been upheld in a wide variety of circumstances against the claim that the law violated the Due Process Clause of the Fourteenth Amendment: See Hooper v. People of State of California, 155 U.S. 648, 15 S.Ct. 207, 39 L.Ed. 297, requirement of license and bond; Orient Insurance Co. v. Daggs, 172 U.S. 557, 19 S.Ct. 281, 43 L. Ed. 552, fixing recovery at insured value; Nutting v. Commonwealth of Massachusetts, 183 U.S. 553, 22 S.Ct. 238, 46 L.Ed. 324, license and deposit of security; Carroll v. Greenwich Insurance Co. of New York, 199 U.S. 401, 26 S.Ct. 66, 50 L.Ed. 246, prohibition of combinations or agreements between companies; Northwestern National Life Ins. Co. v. Riggs, 203 U.S. 243, 27 S.Ct. 126, 51 L.Ed. 168, limitation of defenses; Whitefield v. Aetna Life Ins. Co., 205 U.S. 489, 27 S.Ct. 578, 51 L.Ed. 895, same; German Alliance Ins. Co. v. Hale, 219 U.S. 307, 31 S.Ct. 246, 55 L.Ed. 229, statutory penalty against rate-fixing combinations; German Alliance Ins. Co. v. Lewis, 233 U.S. 389, 34 S.Ct. 612, 58 L. Ed. 1011, rate regulations; Mountain Timber Co. v. State of Washington, 243 U.S. 219, 37 S.Ct. 260, 61 L.Ed. 685, workmen's compensation act; La Tourette v. McMaster, 248 U.S. 465, 39 S.Ct. 160, 63 L.Ed. 362, licensing of brokers; National Union Fire Ins. Co. v. Wanberg, 260 U.S. 71, 43

S.Ct. 32, 67 L.Ed. 136, limiting the time for rejection of hail insurance policies; Merchants Mutual Automobile Liability Ins. Co. v. Smart, 267 U.S. 126, 45 S.Ct. 320, 69 L.Ed. 538, regulation of liability under indemnity policies; Aetna Insurance Co. v. Hyde, 275 U.S. 440, 48 S.Ct. 174, 72 L.Ed. 357, rate regulations; O'Gorman & Young v. Hartford Fire Ins. Co., 282 U.S. 251, 51 S.Ct. 130, 75 L.Ed. 324, regulation of agents' commissions; Hardware Dealers Mutual Fire Ins. Co. v. Glidden, 284 U.S. 151, 52 S.Ct. 69, 76 L.Ed. 214, prescribing compulsory arbitration provisions; Life & Casualty Ins. Co. v. McCray, 291 U.S. 566, 54 S.Ct. 482, 78 L.Ed. 987, additional recovery for failure to pay on demand; Osborn v. Ozlin, 310 U.S. 53, 60 S.Ct. 758, 84 L. Ed. 1074, requiring participation by resident agents; Hoopeston Canning Co. v. Cullen, 318 U.S. 313, 63 S.Ct. 602, 87 L.Ed. 777, regulation of reciprocal insurance associations; State Farm Mutual Automobile Ins. Co. v. Duel, 324 U.S. 154, 65 S.Ct. 573, 89 L.Ed. 812, reserve requirements; Robertson v. People of State of California, 328 U.S. 440, 66 S.Ct. 1160, 90 L.Ed. 1366, licensing of brokers; Daniel v. Family Security Life Ins. Co., 336 U.S. 220, 69 S.Ct. 550, 93 L.Ed. 632, separation of life insurance and undertaking businesses." California State Auto Ass'n Inter-Ins. Bureau v. Maloney, 341 U.S. 105, 71 S.Ct. 601, 603-604 (footnote 2), 95 L.Ed. 496.

See, also, Pennsylvania Fire Ins. Co. v. Gold Issue Mining Co., 243 U.S. 93, 37 S.Ct. 344, 61 L.Ed. 610; International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057; Travelers Health Ass'n v. Commonwealth of Virginia, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154.

See, also, Justice Black's remark that he "* * * would dismiss the appeal on the ground that the constitutional questions are frivolous." California State A. Ass'n Inter-Ins. Bureau v. Maloney, 341 U.S. 105, 71 S.Ct. 601, 604, 95 L.Ed. 496.

Equal protection of the laws is given Pacific as long as it discharges its obligations to the State of Louisiana. Robertson v. People of State of California, 328 U.S.

440, 66 S.Ct. 1160, 90 L.Ed. 1366, and cases there cited.

The Act, La. Act 542 of 1950, makes no hostile discrimination against or among foreign or alien insurers; it merely tends to put them on the same footing as domestic insurers. Resident and non-resident insurers are treated alike. Cf. Young v. Masci, 289 U.S. 253, 53 S.Ct. 599, 77 L.Ed. 1158, 88 A.L.R. 170; German Alliance Ins. Co. v. Hale, 219 U.S. 307, 31 S.Ct. 246, 55 L.Ed. 229; Prudential Ins. Co. v. Benjamin, 328 U.S. 408, 66 S.Ct. 1142, 90 L.Ed. 1342, 164 A.L.R. 476.

We reiterate: Louisiana Act 542 of 1950 was the law of this State at the time of issuance and delivery of Pacific's policy, at the time of the accident, at the time of filing suit, and it is the present law; and, Pacific was doing business in and under the protection and obligations of Louisiana law and policy all the while.

Pacific is physically present within Louisiana boundaries—a resident here—and so bound to Louisiana by allegiance to its laws! Louisiana has a great degree of interest in regulating policies of insurance on local risks—especially on vehicles using its highways.

If Pacific wants to come to Louisiana to inspect the insured automobiles, etc., or to audit the insured's books, is that not an important privilege? (See provision No. 2 of policy quoted above). Is not inspection and auditing here part of "doing insurance business" here? Could not Louisiana exact consent to the direct action here on accidents happening here for the privilege of inspections and auditings here? Those questions, important as they are, we need not answer.[6] Cf. Ace Grain Co. v. American Eagle Fire Ins. Co., D.C., 95 F.Supp. 784.

Our conclusion that Pacific may be held to its consent to be sued directly here on policies issued out of Louisiana as a result of accidents happening in Louisiana, on Louisiana highways, under Louisiana Act 542 of 1950, when it qualified to do business here, makes unnecessary our determination of whether Louisiana Act 541 of 1950 is procedural or substantive law. See, New Amsterdam Casualty Co. v. Soileau, 5 Cir., 167 F.2d 767, 6 A.L.R.2d 128, certiorari denied, 335 U.S. 822, 69 S.Ct. 45, 93 L.Ed. 376.

At the time of the Soileau case, supra, there was no law in Louisiana comparable or similar to La.Act 542 of 1950; that is, requiring an insurance company's consent to the direct action on all its policies in the event of damages done by its insureds in Louisiana before the issuance of the certificate of authority to do business here. The very first Section of that Act says that the Act is "* * * to *add* * * * a new subsection". (Emphasis ours.)

Our conclusion also makes inapposite such cases as Hartford Accident & Indem. Co. v. Delta & Pine Land Co., 292 U.S. 143, 54 S.Ct. 634, 78 L.Ed. 1178, 92 A.L. R. 928.[7]

6. Should Louisiana have "Financial Responsibility Laws" as in some places covered by the policy, would they not apply? Did not Pacific and Houston have Louisiana in mind? (See provision No. 8 of policy quoted above.)

Where would Pacific get "Notice of Claim or Suit" from Houston of a Louisiana accident more expeditiously than where the accident occurred and where both are qualified to do and are doing business? (See provision No. 10 of policy quoted above.)

Where can the "Assistance and Cooperation of the Insured" be gotten better than where the accident occurred and where both Pacific and Houston are qualified to do and are doing business? (See provision No. 11 of policy quoted above.)

7. Besides, here is what the United States Supreme Court said about that case in 1940, in a footnote:

"7. Hartford Accident & Ind. Co. v. Delta Co., 292 U.S. 143, 54 S.Ct. 634, 78 L.Ed. 1178, 92 A.L.R. 928, resting on Home Ins. Co. v. Dick, 281 U.S. 397, 50 S.Ct. 338, 74 L.Ed. 926, 74 A.L.R. 701, held that the terms of a contract validly made in Tennessee could not be subsequently enlarged by Mississippi as to a condition of 'substantial importance' when suit was later brought on the policy in Mississippi, simply because 'the interest insured was in Mississippi when the obligation to indemnify * * * matured, and it was [the company's] duty to make payment there.' 292 U.S. at page 149, 54 S. Ct. at page 636, 78 L.Ed. 1178, 92 A.L.R. 928. At the time the contract was entered

510

In our research, we have found the case of Ritterbusch v. Sexmith, 256 Wis. 507, 41 N.W.2d 611, 16 A.L.R.2d 873, which, after study, we also consider inapposite, or, at least, not controlling.[8]

Moreover, our conclusion undercuts the necessity of our determining whether the place of performance of Pacific on its policy with Houston was in Louisiana or in Texas. See Lowery v. Zorn, La.App., 157 So. 826, overruled in Stephenson v. List Laundry & Dry Cleaners, 182 La. 383, 162 So. 19, 21, q. v.

 "In determining the power of a state to apply its own regulatory laws to insurance business activities, the question in earlier cases became involved by conceptualistic discussion of theories of the place of contracting or of performance. More recently it has been recognized that *a state may have substantial interests in the business of insurance of its people or property regardless of these isolated factors. This interest may be measured by highly realistic considerations* such as the protection of the citizen insured or the protection of the state from the incidents of loss. Alaska Packers Ass'n v. Industrial Accident Commission, 294 U.S. 532, 542, 55 S.Ct. 518, 521, 79 L.Ed. 1044. To insure the protection of state interests it is now recognized that a state may not be required to enforce in its own courts the

into *Mississippi had no interest in the risk covered.* The Court felt that, even at the time of suit, 'performance at most involved only the casual payment of money in Mississippi,' 292 U.S. at page 150, 54 S.Ct. at page 636, 78 L.Ed. 1178, 92 A.L.R. 928, and that was an interest so subordinate to that of Tennessee that the latter was entitled to have the right of way. *No question was thus involved touching the right of a state to regulate companies doing business within its borders as to contracts of insurance covering local risks.*" Osborn v. Ozlin, 310 U.S. 53, 60 S.Ct. 758, 763–764 (footnote 7), 84 L.Ed. 1074. (Emphasis supplied.)

8. This Wisconsin case says, in part, but in its deciding paragraph: "If, then, he brings from another state what may legally be sold to him there we see no public policy against it even though such insurance may not be as beneficial to an injured person as the sort sold here." 256 Wis. 507, 41 N.W.2d 611, 615, 16 A. L.R.2d 873, 880.

Wisconsin, however, has not as its jurisprudence the equivalent of our Louisiana case of West v. Monroe Bakery, 217 La. 189, 46 So.2d 122, 124, from which we quote the following:

"The insurer contended that the direct right of action given to a third person under Act 55 of 1930 was limited to those cases in which the policy did not prohibit such actions. In rejecting this defense, the Court said, [Bougon v. Volunteers of America, La.App.], 151 So. [797] at page 802:

" 'Considering both acts together, the act of 1918 and the act of 1930, it seems to us too plain for argument that it represents a determination upon the part of the Legislature to extend the rights of an injured party as against the insurer. * * *

* * * * * *

" 'Much has been said during the oral argument of this case concerning the hardship to the insurer which the interpretation of the statute we have adopted would involve. If there be any injustice to the insurer as a result of this statute, the obvious relief is through legislative action. * * * ' "

And the headnote writer correctly, we believe, inferred, as follows: "By the public policy of the State, as expressed in Act 55 of 1930, where an insured third person is not at fault, he does not lose his right or cause of action for the breaching of an agreement by the insured with its insurer; therefore, an insurance policy against liability is not issued primarily for the protection of the assured but for the protection of the traveling public." 46 So.2d 122, 123.

So, we cannot say, as in the Wisconsin case is said: " * * * we see no public policy against it * * * ".

Further, and most importantly, our Act 55 of 1930 for all practical purposes places us in the same status as Wisconsin, but La. Act 542 of 1950, enacted twenty years later, requires an insurance company's consent to the direct action on all its policies in the event of damages done by its insureds in Louisiana before the issuance of the certificate of authority to do business here. This later provision in Louisiana law makes the Wisconsin case clearly inapposite.

Moreover, the Wisconsin case is merely persuasive with us, at best; we prefer to join the view of the two dissenting judges—incidentally, the Louisiana view.

terms of an insurance policy normally subject to the law of another state *where such enforcement will conflict with the public policy of the state of the forum*. Griffin v. McCoach, 313 U.S. 498, 61 S.Ct. 1023, 85 L.Ed. 1481, 134 A.L.R. 1462.

"The actual physical signing of contracts may be only one element in a broad range of business activities. *Business may be done in a state although those doing the business are scrupulously careful to see that not a single contract is ever signed within that state's boundaries.* Important as the execution of written contracts may be, it is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction.

"* * * There is no more reason to bar the state from authority over the insurance of the property within it than to exclude it from control of all the other property interests mentioned.

"* * * [T]he Allgeyer [Allgeyer v. State of Louisiana, 156 [165] U.S. 578, 17 S.Ct. 427, 41 L.Ed. 832] line of decisions cannot be permitted to control cases such as this, *where the public policy of the state is clear, the insured interest is located in the state, and there are many points of contact between the insurer and the property in the state.*

▇▇▇ "* * * The power [Louisiana] New York may exercise to regulate domestic insurance associations may be applied to foreign associations which [Louisiana] New York permits to conduct the same kind of business. The appellants [Pacific] *can not, 'by spreading their business and activities over other states * * set at naught the public policy'* of [*Louisiana*] New York, Atlantic & Pacific Tea Co. v. Grosjean, 301 U.S. 412, 427, 57 S.Ct. 772, 778, 81 L.Ed. 1193, 112 A.L.R. 293. Where as here the state has full power to prescribe the forms of contract, the terms of protection of the insured, and the type of reserve funds needed, *'the mere fact that state action may have repercussions beyond state lines is of no judicial significance.'* Osborn v. Ozlin, supra, 310 U. S. at page 62, 60 S.Ct. at page 761, 84 L. Ed. 1074. Neither [Louisiana] New York nor [Texas] Illinois loses the power to protect the interests of its citizens because these associations carry on activities in both places." Hoopeston Canning Co. v. Cullen, 318 U.S. 313, 63 S.Ct. 602, 605, 607, 87 L.Ed. 777, 145 A.L.R. 1113. (Footnotes to quoted passage omitted.) (Emphasis supplied.)

Nor do we reach the question of the constitutional validity of the Texas law permitting and enforcing a "no action clause" in insurance policies there issued and delivered on vehicles that are contemplated to travel Louisiana highways and in the face of contrary Louisiana policy and laws, more particularly under the facts of this case. Would not the Texas law then have extra-territorial effect?

▇▇▇ And, "[i]t is not our province to measure the social advantage to [Louisiana] Virginia of regulating the conduct of insurance companies within her borders insofar as it affects [Louisiana] Virginia risks. *Government has always had a special relation to insurance.* * * * All of these are questions of policy not for us to judge. For it can never be emphasized too much that one's own opinion as to the wisdom of a law must be wholly excluded when one is doing one's judicial duty.[9] The limit of our inquiry is reached when we conclude that [Louisiana] Virginia has exerted its powers as to matters within the bounds of her control." Osborn v. Ozlin, 310 U.S. 53, 60 S.Ct. 758, 762, 84 L.Ed. 1074. See footnote five (5) on page 762 of 60 S.Ct. where "Louisiana, Acts of 1918, No. 153", then repealed and replaced by La.Act 348 of 1938, is approvingly mentioned. See, also, California State Auto Ass'n Inter-Ins. Bureau v. Maloney, 341 U.S. 105, 71 S.Ct. 601, 604, 95 L.Ed. 496.

Although this is not a case of Louisiana v. Texas or Texas v. Louisiana—neither

---

9. The Judge in the instant case, however, believes professionally and officially in the public policy of the legal conclusions of this opinion, brought about by the Legislature of Louisiana.

are in court—, if Texas can refuse to give effect to similar Louisiana law, Wells v. Irwin, 43 F.Supp. 212, affirmed Wells v. American Employers' Ins. Co., 5 Cir., 132 F.2d 316, who is here to say that Louisiana cannot refuse to give effect to similar Texas law? Cf. Glazier v. Van Sant, D.C., 33 F.Supp. 113.

The manifest injustice to plaintiff of deciding any other way is too apparent to warrant expanding upon to any great length. We shall not pause long to consider all instances.

"The rule that the law of the place of the wrong governs liability for torts is recognized practically everywhere. Savigny's suggestion that the lex fori be applied has been abandoned, except perhaps in Russia." Lorenzen, "Cases on Conflict of Laws", 5th Ed., Chapter 8, Introductory Note, p. 388.

Since all operative facts surrounding this alleged tort are confined to Louisiana, the Louisiana law governs—regardless of where this case is tried. What court is in a better position to try this case than one sitting in Louisiana? Where can this suit be more conveniently tried than in a court sitting in Louisiana, where witnesses would more likely live and where claims for losses would presumably be investigated, etc.?

Plaintiff, a guest, cannot be forced to one defendant or be compelled to go to Texas and sue perhaps only one there and have a Texas court apply Louisiana law, only to find that in a Texas suit that defendant is not liable under the Texas appreciation of Louisiana law. Then there is the question of prescription, and so ad infinitum. Such factors, though we need not put them on the scale in this case, have great weight.

A contrary conclusion would be too violent a departure from Louisiana public policy and law for Louisiana to tolerate It is within the Louisiana police power for Louisiana to exact the voluntary consent to be directly sued on all policies issued by an insurer as a result of damages done on Louisiana highways or in Louisiana.[10]

We do not have the proper complaint, nor the proper parties, before us to decide whether Louisiana may revoke Pacific's privilege of doing business here, when Pacific refuses to consent to the direct action when sued here, though it voluntarily consented before hand to be so sued.

Here are very, very pertinent remarks made by the United States Supreme Court, without dissent, in a case involving liability insurance on motor vehicles, just last April:

"Highway accidents with their train of property and personal injuries are notoriously important problems in every community. Clearing the highways of irresponsible drivers, devising ways and means for making sure that compensation is awarded the innocent victims, and yet managing a scheme which leaves the highways open for the livelihood of the deserving are problems that have taxed the ingenuity of law makers and administrators.

"*Whether* [*Louisiana's*] *California's program is wise or unwise is not our concern.* See Olsen v. State of Nebraska ex rel. Western Reference & Bond Ass'n, 313 U.S. 236, 61 S.Ct. 862, 85 L.Ed. 1305; Lincoln Federal Labor Union v. Northwestern Iron & Metal Co., 335 U.S. 525, [69 S. Ct. 251, 93 L.Ed. 212]. *The problem is a local one on which views will vary.* We cannot say California went beyond permissible limits when it made the liability insurance business accept insurable risks which circumstances barred from insurance and hence from the highways. Appellant's

---

10. "The present case, therefore, is wholly unlike those instances in which a 'so-called right is used as part of a scheme to accomplish a forbidden result.' Fidelity & Deposit Co. v. Tafoya, 270 U.S. 426, 434, 46 S.Ct. 331, 332, 70 L.Ed. 664. For it is clear that [Louisiana] Virginia has a definable interest in the contracts she seeks to regulate and that what she has done is very different from the imposition of conditions upon [Pacific's] appellants' privilege of engaging in local business which would bring within the orbit of state power matters unrelated to any local interests." Osborn v. Ozlin, 310 U.S. 53, 60 S.Ct. 758, 762, 84 L.Ed. 1074.

business may of course be less prosperous as a result of the *regulation*. That diminution in value, however, *has never mounted to the dignity of a taking in the constitutional sense."* California State Auto Ass'n Inter-Ins. Bureau v. Maloney, 341 U.S. 105, 71 S.Ct. 601, 604, 95 L.Ed. 496. (Emphasis supplied.)

The entire reasoning and ruling in the Maloney case, supra, is especially apropos here.

And, as long as this Court sits as a court of justice, Pacific need not fear of being forced to pay more when directly sued than it would have to indemnify Houston were the latter sued and proved negligent in any court of the Nation. This is true as long as we have the power to order a dismissal for failure to state a claim, enter a summary judgment, direct a verdict, enter a judgment notwithstanding the verdict, exact a remittitur or order a new trial.

For these reasons the motion to dismiss and the alternative motion for summary judgment should be overruled and denied.

And it is so ordered.