Matter of Elhannon Wholesale Nursery, Inc. (Commissioner of Labor) (2024 NY Slip Op 01217)

Matter of Elhannon Wholesale Nursery, Inc. (Commissioner of Labor)

2024 NY Slip Op 01217

Decided on March 7, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 7, 2024

536000
[*1]In the Matter of Elhannon Wholesale Nursery, Inc., Appellant. Commissioner of Labor, Respondent.

Calendar Date:January 9, 2024

Before:Egan Jr., J.P., Aarons, Pritzker, Reynolds Fitzgerald and Mackey, JJ.

Whiteman Osterman & Hanna LLP, Albany (Gabriella R. Levine of counsel), for appellant.
Letitia James, Attorney General, New York City (Dennis A. Rambaud of counsel), for respondent.

Aarons, J.
Appeal from a decision of the Unemployment Insurance Appeal Board, filed March 1, 2022, which ruled that Elhannon Wholesale Nursery, Inc. was liable for additional unemployment insurance contributions on remuneration paid to certain workers.
Elhannon Wholesale Nursery, Inc. operates a tree farm and nursery in Rensselaer County. As part of its operation, Elhannon employs noncitizens authorized to work temporarily as agricultural laborers under the US Immigration and Nationality Act (see 8 USC §§ 1101 [a] [15] [H] [ii] [a]; 1188). These "H-2A workers" (8 USC § 1188 [i] [2]) provide paid seasonal work for Elhannon generally from May to November, and Elhannon also provides them with housing and pays for utility costs. Following an audit of Elhannon's records and books, the Department of Labor concluded that Elhannon owed additional contributions on remuneration paid to the H-2A workers from 2014 to 2016 in the amount of $28,875.68.[FN1] Following a hearing, the Administrative Law Judge determined that the H-2A workers were employees of Elhannon under Labor Law § 511 during the time period in question and sustained the finding that Elhannon was liable for contributions on remuneration paid to them but referred the matter back to the Department for a recalculation of the amount due for the workers' lodging and utilities. After both parties administratively appealed, the Board modified the Administrative Law Judge's decision, finding that Elhannon was liable for contributions on remuneration paid to the H-2A workers and that the Department had properly calculated the amount of the contributions owed, obviating the need to refer the matter back for recalculation. Elhannon appeals. We affirm.
While the administrative appeals were pending in this matter, the Legislature passed the Farm Laborers Fair Labor Practices Act (L 2019, ch 105). The Act brought sweeping changes to the Labor Law, providing farm laborers with, among other things, overtime compensation, one day of rest a week, a 60-hour work week and collective bargaining rights (see L 2019, ch 105). As part of the Act, Labor Law § 564 was amended to include that "[f]or purposes of this section the term 'employment' shall not include services rendered by an individual who is admitted to the United States to perform agricultural labor pursuant to 8 USC [§] 1188 if, at the time such services are rendered, they are excluded from the definition of employment in [26 USC § 3306 (c)]" (Labor Law § 564 [2]). Pursuant to 26 USC § 3306 (c) (1) (B), employment does not include labor "performed by an individual who is an alien admitted to the United States to perform agricultural labor pursuant to . . . [8 USC § 1101 (a) (15) (H)]." The legislation was enacted on July 17, 2019 with, as relevant here, an effective date of January 1, 2020 (L 2019, ch 105, § 25).
Elhannon initially argues that it should not be liable for contributions for the H-2A workers because an amendment made to Labor Law § 564 in 2019 was remedial [*2]and should be applied retroactively. "It is a fundamental canon of statutory construction that retroactive operation is not favored by courts and statutes will not be given such construction unless the language expressly or by necessary implication requires it" (Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 584 [1998] [citations omitted]). Although "remedial legislation should be given retroactive effect in order to effectuate its beneficial purpose" (Matter of Gleason [Michael Vee, Ltd.], 96 NY2d 117, 122 [2001]), "[c]lassifying a statute as remedial does not automatically overcome the strong presumption of prospectivity since the term may broadly encompass any attempt to supply some defect or abridge some superfluity in the former law" (Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d at 584 [internal quotation marks and citation omitted]; see Whitehead v Pine Haven Operating LLC, 222 AD3d 104, 109 [3d Dept 2023]). "Other factors in the retroactivity analysis include whether the Legislature has made a specific pronouncement about retroactive effect or conveyed a sense of urgency; whether the statute was designed to rewrite an unintended judicial interpretation; and whether the enactment itself reaffirms a legislative judgment about what the law in question should be" (Matter of Gleason [Michael Vee, Ltd.], 96 NY2d at 122 [citations omitted]).
The Legislature did not explicitly provide that the amendment in question was to be applied retroactively. Further, no sense of urgency was conveyed, as the statute was enacted on July 17, 2019 but its effective date was postponed to January 1, 2020. That said, "[i]f the amendment[ ] w[as] to have retroactive effect, there would have been no need for any postponement" (People v Utsey, 7 NY3d 398, 403-404 [2006] [internal quotation marks and citation omitted]; see Bolarinwa v Albany Med. Ctr. Hosp., 261 AD2d 21, 23 [3d Dept 2000], lv dismissed 95 NY2d 825 [2000]). Finally, based upon our review of the legislative history, the amendment to Labor Law § 564 did not reaffirm a legislative judgment as to what the law should be. Rather, the exclusion of services rendered by the H-2A workers from the definition of employment was intended as a benefit to farm owners to help defray the increased costs to the owners related to the changes to the Labor Law in the Act that benefit farm laborers (see NY Assembly Debate on 2019 NY Assembly Bill A8419, June 19, 2019, at 124-125). "[I]t takes a clear expression of the legislative purpose to justify a retroactive application of a statute" (Gottwald v Sebert, 40 NY3d 240, 259 [2023] [internal quotation marks, ellipsis and citation omitted]). Here, the evidence regarding retroactivity "is either against that view or equivocal" (Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d at 589). In light of the foregoing, the strong presumption against retroactivity has not been overcome (see Gottwald v Sebert, 40 NY3d at 260; Majewski v Broadalbin-Perth Cent[*3]. School Dist., 91 NY2d at 589-590; Whitehead v Pine Haven Operating LLC, 222 AD3d at 109).
Elhannon also argues that the Board erred in determining that the services rendered by H-2A workers during the time period in question was covered employment under the Labor Law so as to trigger liability for additional unemployment insurance contributions on remuneration paid to such workers. We disagree. Under Labor Law § 511, "the term 'employment' is specifically made synonymous with 'covered' employment" (Matter of Gruber [New York City Dept. of Personnel-Sweeney], 89 NY2d 225, 233 [1996]). During the time period in question, employers were liable for contributions if they had, as was the case here, "paid cash remuneration of [$20,000] or more in any calendar quarter to persons employed in agricultural labor" (Labor Law former § 564 [1] [a] [1]; see Labor Law former § 511 [6] [a]).[FN2]
Elhannon also asserts that it should not be liable for contributions because, due to the restrictions imposed on the H-2A workers by the temporary visas, those workers were not eligible to collect unemployment insurance benefits (see Labor Law § 591 [2]; Matter of Cale [Commissioner of Labor], 46 AD3d 1065, 1066 [3d Dept 2007]; Matter of Graif [Commissioner of Labor], 250 AD2d 1012, 1013-1014 [3d Dept 1998]). Initially, Elhannon does not dispute that the H-2A workers provided agricultural labor, and the record reflects that it paid those workers sufficient remuneration so as to satisfy the former statutory requirements. Inasmuch as Labor Law former §§ 511 (6) (a) and 564 (1) (a) (1) included the services provided by the H-2A workers in its definition of covered employment, we cannot agree with Elhannon that the Board's treatment of H-2A workers as covered employees was inconsistent with the law during the time period in question.
Regarding an employer's liability to pay contributions despite employees being ineligible to receive benefits, "the State of New York has levied a pay[ ]roll tax . . . assessed upon all employers generally without regard to the nature of employment, with certain exceptions" (Matter of Cassaretakis, 289 NY 119, 126 [1942], affd sub nom. Standard Dredging Corp. v Murphy, 319 US 306 [1943]). "This tax is an excise based upon the exercise of the privilege of employing individuals" and "[t]he moneys collected by means of this tax are used for the relief of the unemployed" (id.). Notably, an employer's obligation regarding contributions "are not to [its] employees but to the State" and claimants "assert their rights against the State and not against the employer" (id.). "The employer's duty to pay contributions and the employee's right to receive benefits are independent of each other" (id.). In our view, the employer's liability to make contributions to the unemployment insurance fund is not contingent on whether the employees are eligible to collect benefits. Accordingly, the Board's assessment of contributions against Elhannon was not inconsistent [*4]with the Labor Law, even though the employees may have been ineligible to receive benefits (see Matter of Chester B. Winthrop & Co. [Sweeney], 225 AD2d 923, 924 [3d Dept 1996]).
Elhannon also challenges the Board's valuation of the H-2A workers' housing and utility remuneration in determining the amount of contributions due. Remuneration is defined as "every form of compensation for employment paid by an employer to his [or her] employee . . . , including salaries . . . and the reasonable money value of board, rent, housing, lodging, or similar advantage received" (Labor Law § 517 [1]). "If an employer fails to file a quarterly combined withholding, wage reporting and unemployment insurance return as required . . . for the purpose of determining the amount of contributions due or for the purpose of determining contribution rates under this article, . . . the [C]ommissioner [of Labor] shall determine the amount of contribution due from such employer . . . on the basis of such information as may be available" (Labor Law § 571). As no such return was filed by Elhannon, the Commissioner was authorized to determine the amount of contributions owed (see Matter of Ciotoli [Commissioner of Labor], 199 AD3d 1181, 1183 [3d Dept 2021]). The auditor based his assessment of the value of the housing and utilities provided to the H-2A workers on estimates of fair market rent for Rensselaer County during the relevant time period published by the US Department of Housing and Urban Development, as well as the rates reflected in his personal utility bills. Although Elhannon's president testified to values for housing and utilities that were lower than those assessed by the auditor, he did not offer any documentation in support of his testimony. In light of the foregoing, the Board's assessment of the contributions owed was correct and will not be disturbed (see id. at 1183-1184; Matter of Exotic Is. Enters. [Commissioner of Labor], 135 AD3d 1087, 1088-1089 [3d Dept 2016]). Elhannon's remaining arguments have been considered and found to be without merit.
Egan Jr., J.P., Pritzker, Reynolds Fitzgerald and Mackey, JJ., concur.
ORDERED that the decision is affirmed, without costs.

Footnotes

Footnote 1: Included in the additional contributions were wages paid and estimates regarding the value of the housing provided to the H-2A workers and the cost of utilities.

Footnote 2: Contrary to Elhannon's contention, the fact that the Federal Unemployment Tax Act excludes agricultural labor from its definition of employment did not preclude New York from including such labor in its definition (see Matter of Forrence Orchards [Ross], 85 AD2d 44, 45-46 [3d Dept 1982], appeal dismissed 57 NY2d 673 [1982]).